

# NUMBER 13-12-00398-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**PATSY JEAN JOHNSON A/K/A**                                      **Appellant,**
**PATRICIA M. JOHNSON,**

**v.**

**WAYNE VENTLING,**                                              **Appellee.**

---

### On appeal from the 94th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

We issued our original memorandum opinion in this cause on March 7, 2013. Both parties to the appeal have filed motions for rehearing and appellee has filed a motion for en banc reconsideration. We deny the motions for rehearing and reconsideration but withdraw our previous memorandum opinion and judgment and

substitute the following memorandum opinion and accompanying judgment in their place.

For the third time in nine years, appellant Patricia M. Johnson[1] seeks this Court's assistance in her ongoing efforts to enforce contractual alimony obligations agreed to by her purported ex-husband, appellee Wayne Ventling. In this proceeding, Johnson contends that the trial court erred in its award of interest, attorney's fees, and court costs. We affirm in part, reverse and render in part, and reverse and remand in part.

## I. BACKGROUND

Johnson and Ventling cohabited from 1982 to 1995. In 1995, upon being advised by his attorney that a common-law marriage existed, Ventling filed for divorce. The parties agreed on the terms of a final decree, including a provision that Ventling pay Johnson alimony of $2,500 per month for 84 months. The agreed divorce decree was rendered on April 13, 1995.

Two years after the decree was entered, Ventling stopped making the monthly alimony payments. Johnson moved for enforcement, and Ventling responded by alleging that the contractual alimony obligation was void because the parties had, in fact, never been married. Ventling contended that he had been duped by Johnson into believing that a marriage had existed; he further claimed that the trial court retained plenary jurisdiction to vacate the divorce decree because, since there was never any marriage to dissolve, the April 13, 1995 judgment was interlocutory in nature. The trial court agreed with Ventling and vacated the divorce decree, but we held that the trial court's ruling was void. *Johnson v. Ventling*, 132 S.W.3d 173, 179 (Tex. App.—Corpus Christi 2004, no pet.) (*Johnson I*). We concluded that the divorce decree was "regular

---

[1] Also known as Patsy Jean Johnson.

on its face" and not void, and that Ventling's challenge to the enforceability of the decree therefore amounted to an impermissible collateral attack. *Id.* at 178–79.

On remand, the trial court rendered summary judgment denying Johnson's motion for enforcement of the alimony obligations. The trial court, noting that Johnson had by then stipulated to the fact that the parties had never been married,[2] concluded that the alimony provisions in the 1995 decree were unenforceable "because alimony, as defined in 26 United States Code [section] 71, requires the existence of a marriage." Again, we reversed. *Johnson v. Ventling*, No. 13-09-00563-CV, 2010 Tex. App. LEXIS 8437, at *19–25 (Tex. App.—Corpus Christi Oct. 21, 2010, no pet.) (mem. op. on reh'g) (*Johnson II*). We held that our conclusion in *Johnson I*—i.e., that the 1995 decree was not void—was the law of the case and contradicted the judgment on appeal. *Id.* at *19–20. We noted that we could locate no persuasive authority indicating that contractual alimony is unenforceable for lack of consideration if the parties were never married. *Id.* at *22. We further held that the parties' stipulation as to the lack of a marital estate was immaterial because "contractual alimony, if awarded, is not part of the 'just and right' division of the marital estate in a divorce proceeding." *Id.* at *23. Additionally, we noted that Ventling's affirmative defenses to enforcement of the alimony provision—including his claim that he was defrauded by Johnson into agreeing to a divorce—were unavailable to him because such defenses may only be raised by petition for bill of review. *Id.* at *22–23 n.9 (citing TEX. R. CIV. P. 329b(f)). In conclusion, we directed the trial court to

---

[2] Johnson stipulated to the lack of a marriage in order to avoid federal prosecution for collecting, throughout her thirteen-year cohabitation with Ventling, federal military widow's benefits from a prior marriage. *See Johnson v. Ventling*, 132 S.W.3d 173, 175 (Tex. App.—Corpus Christi 2004, no pet.) (*Johnson I*). At a 2011 hearing, Johnson's counsel represented to the trial court that "the law was amended . . . to make it possible for widows to marry. . . ." We express no opinion on the matter.

3

grant Johnson's motion for enforcement and to award her: (1) $ 142,500 in unpaid contractual alimony; (2) appropriate prejudgment interest, *see Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (permitting the award of prejudgment interest based on general principles of equity); (3) reasonable attorney's fees; and (4) costs of court.

*Id.* at *25.

On remand, Johnson filed a motion asking the trial court to enforce our ruling in *Johnson II*.[3] In the motion, Johnson contended that she was "entitled to judgment on December 19, 1997" and that, therefore, the pre- and postjudgment interest amounts should be calculated as of that date. Accordingly, she requested that the trial court award her the total sum of $769,746.80, representing: (1) $142,500 in damages; (2) $3,435.62 in prejudgment interest; (3) $366,438.48 in postjudgment interest, at 10% compounded annually, *see* TEX. FIN. CODE ANN. § 304.006 (West 2006); (4) $250,402.09 in attorney's fees incurred since 1997, including fees for two trials and two appeals to this Court[4]; and (5) $6,970.61 in court costs. In response, Ventling argued that postjudgment interest was unavailable to Johnson because our opinion in *Johnson II* permitted only the recovery of prejudgment interest. Ventling further contended that the amount of reasonable and necessary attorney's fees that should be awarded to Johnson is $15,000.

The trial court, after a hearing, awarded Johnson: (1) $142,500 in contractual

---

[3] It is noteworthy that, since we last had the opportunity to consider this case, Ventling was found by clear and convincing evidence to have fraudulently transferred assets to his mother and sister in an attempt to prevent Johnson from executing on any Texas judgment rendered against him. The finding was made by a trial court in Iowa, where Ventling resides, and was contained in a judgment rendered in response to a petition filed by Johnson seeking to void the transfers. The Iowa judgment declaring the transfers void was filed with the Texas trial court by Johnson and appears in the record before us.

[4] Johnson further requested $50,000 in attorney's fees in the event she is successful in prosecuting a third appeal in this Court and $20,000 in the event she is successful in prosecuting an appeal in the Texas Supreme Court.

4

alimony; (2) $3,435.62 in prejudgment interest; (3) $70,275 in attorney's fees; and (4) $20 in court costs. The judgment provided that "[p]ostjudgment interest at the rate of 5% will accrue on the total amount awarded in this Judgment, from the date of its entry." Johnson filed motions for reconsideration, to modify the judgment, and for findings of fact and conclusions of law, none of which the trial court ruled upon. *See* TEX. R. CIV. P. 329b(c) (providing that a motion for new trial or to correct or modify a judgment is overruled by operation of law after 75 days). This appeal followed.

## II. DISCUSSION

By three issues on appeal, Johnson contends that the trial court's judgment was erroneous in its award of (1) interest on the damages award, (2) attorney's fees, and (3) court costs. We will address each element of the judgment in turn.

### A. Judgment Interest

#### 1. Standard of Review

We review a trial court's award of prejudgment interest under an abuse of discretion standard. *Morales v. Morales*, 98 S.W.3d 343, 348 (Tex. App.—Corpus Christi 2003, pet. denied); *see Sw. Grain Co. v. Pilgrim's Pride S.A. de C.V.*, No. 13-07-00557-CV, 2010 Tex. App. LEXIS 5014, at *16 (Tex. App.—Corpus Christi June 28, 2010, pet. denied) (mem. op.). To determine if there was an abuse of discretion, we must decide if the lower court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Sw. Grain Co.*, 2010 Tex. App. LEXIS 5014, at *16.

On the other hand, postjudgment interest is regulated by statute, and as such, its application is a question of law that we review de novo. *Advanced Messaging Wireless,*

5

*Inc. v. Campus Design, Inc.*, 190 S.W.3d 66, 71 (Tex. App.—Amarillo 2005, no pet.) (citing *Columbia Med. Ctr. v. Bush ex rel. Bush*, 122 S.W.3d 835, 865 (Tex. App.—Fort Worth 2003, pet. denied)).

### 2.    Applicable Law

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins*, 962 S.W.2d at 528 (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)). An award of prejudgment interest may be based on either an enabling statute or general principles of equity. *Id.* (citing *Cavnar*, 696 S.W.2d at 552; *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480–85 (Tex. 1978)). There is no statute enabling the recovery of prejudgment interest on a contract claim such as Johnson's. *Cf.* TEX. FIN. CODE ANN. § 304.102 (West 2006) ("A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest."). Accordingly, the common law forms the legal basis for the award of prejudgment interest in this case.

Under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed. *Johnson & Higgins*, 962 S.W.2d at 531. Common law prejudgment interest is computed as simple interest and it accrues at the rate set by statute for postjudgment interest. *Id.* at 532.[5] The postjudgment interest rate, in cases where no interest rate is

---

[5] In *Johnson & Higgins*, the Texas Supreme Court modified the common law prejudgment interest rules previously set forth in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554–56 (Tex. 1985), to conform with the statute governing prejudgment interest in wrongful death, personal injury, and property damage cases. *See Johnson & Higgins of Tex. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *see also* TEX. FIN. CODE ANN. ch. 304 (West 2006). The *Johnson & Higgins* Court held: "Our common law prejudgment interest holding applies to all cases in which judgment is rendered on or after December 11, 1997, and to all other cases currently in the judicial process in which the issue has been

6

specified by contract, is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," except that the rate can be no lower than 5% nor higher than 15%. TEX. FIN. CODE ANN. § 304.003 (West 2006).

### 3. Analysis

It is undisputed by the parties that Ventling stopped making the contractual alimony payments in 1997, and—given our 2010 ruling that the contractual alimony obligations are enforceable—that Ventling owed Johnson $142,500 under a provision in the original divorce decree that provided for acceleration of alimony payments in the event of Ventling's default. *See Johnson II*, 2010 Tex. App. LEXIS 8437, at *3. In *Johnson II*, we directed the trial court to award the $142,500 as well as "appropriate prejudgment interest." *Id.* at *25. Johnson contended that she is entitled to $3,435.62 in prejudgment interest as well as $366,438.48 in postjudgment interest accrued from December 19, 1997 (the date that the trial court initially heard Johnson's original motion for enforcement) to March 21, 2012 (the date the judgment on appeal was rendered).

Ventling's argument in response, made before the trial court and on appeal, is two-fold. First, he contends that the award of prejudgment interest on the unpaid alimony was limited to $3,435.62 because that is the amount of prejudgment interest Johnson specifically requested in her motion to enforce this Court's 2010 mandate. Second, Ventling argues that, to the extent Johnson requested *postjudgment* interest in her motion, the trial court was without authority to make that award because our directive at the conclusion of our *Johnson II* opinion did not specifically authorize it. *See*

---

preserved." *Johnson & Higgins*, 962 S.W.3d at 533. The rules set forth in that case apply here because, although the judgment requiring Ventling to pay contractual alimony was rendered in 1995, the judgment granting Johnson's motion for enforcement could have come no earlier than December 19, 1997, the date the trial court first held a hearing on the motion for enforcement.

7

*id.*; *see also Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue."). The trial court accepted Ventling's argument in part and awarded only $3,435.62 in prejudgment interest on the $142,500 damages award.[6]

We first note that our 2010 opinion in no way restricted the trial court's ability or responsibility to award postjudgment interest. In fact, even if we intended to prohibit the trial court from making such an award, we would not have the legal authority to do so. *See* Tex. Fin. Code Ann. § 304.001 (West 2006) ("A money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment."); *Office of the Attorney Gen. of Tex. v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002) ("The [postjudgment interest] statute is unambiguous and does not require, as a prerequisite for accruing interest, that judgments specifically include an award of postjudgment interest. . . . Instead, under the statute, interest accrues automatically once a court renders its judgment."); *see also Hinojosa v. Hinojosa*, No. 13-06-684-CV, 2007 Tex. App. LEXIS 5351, at *12–13 (Tex. App.—Corpus Christi July 5, 2007, no pet.) (mem. op.) ("Postjudgment interest . . . is automatic and required by statute, even if not specifically awarded or narrated in the judgment."). Next, we note that it is abundantly clear from our opinion in *Johnson II* that we sustained Johnson's issues in their entirety; we did not "implicitly deny" Johnson's request for postjudgment interest, as Ventling claims. *See Johnson II*, 2010 Tex. App. LEXIS 8437, at *25 ("Johnson's issues are sustained."). Finally, in any event, the judgment on appeal did explicitly award

---

[6] The trial court did not, apparently, accept Ventling's argument that it had no authority to award postjudgment interest. As noted, its final judgment stated: "Postjudgment interest at the rate of 5% will accrue on the total amount awarded in this Judgment, from the date of its entry."

postjudgment interest of 5%, and it specified that the interest would accrue beginning on the date of entry on the judgment.

With respect to prejudgment interest, we disagree with Ventling that the trial court could not have awarded any more than $3,435.62, the amount of prejudgment interest Johnson requested in her motion. Johnson's motion specifically stated that she believed she was entitled to judgment as of December 19, 1997, and that the pre- and postjudgment interest amounts she requested therein were calculated as of that date. If the postjudgment interest began accruing, as Ventling asserted, on the date the judgment on appeal was rendered—March 21, 2012—then prejudgment interest must have accrued *until* that date. Alternatively, if Johnson is correct that postjudgment interest should have started accruing on December 19, 1997, then the trial court's award of prejudgment interest was correct but its date for the commencement of postjudgment interest accrual was erroneous. Either way, the trial court abused its discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts.").

The pertinent case law supports Johnson's position and establishes that, when an appellate court reverses a judgment, the accrual of postjudgment interest (and, consequently, the termination of prejudgment interest) relates back to the date of the original erroneous trial court judgment. *See, e.g., Thornal v. Cargill, Inc.*, 587 S.W.2d 384, 385 (Tex. 1979) ("[W]hen the trial court's judgment is erroneous, the judgment of the court of civil appeals must take its place and plaintiff is entitled to interest from the date of the erroneous judgment."); *Am. Paper Stock Co. v. Howard*, 528 S.W.2d 576, 577 (Tex. 1975) (same); *Long v. Castle Tex. Prod. L.P.*, 330 S.W.3d 749, 753–54 (Tex.

App.—Tyler 2010, pet. abated) ("[A] party that *ultimately* prevails is entitled to postjudgment interest from the date the original judgment was rendered, irrespective of whether the original judgment was erroneous, because that is the date upon which the trial court should have rendered a correct judgment."); *State Dep't of Highways & Pub. Transp. v. Timpson*, 795 S.W.2d 24, 27 (Tex. App.—Tyler 1990, writ denied) ("Interest on the revised judgment should run from the date of the original or erroneous judgment."); *D. C. Hall Transp., Inc. v. Hard*, 355 S.W.2d 257, 260 (Tex. Civ. App.—Fort Worth 1962, writ ref'd n.r.e.) (""Since the [1958] judgment [n.o.v.] was erroneous, and the 1961 judgment took its place, plaintiff was entitled to interest from the date of the erroneous judgment."); *see also Phillips v. Bramlett*, No. 12-0257, 2013 Tex. LEXIS 440, at *25 (Tex. June 7, 2013).[7]

---

[7] In *Phillips v. Bramlett*, the Texas Supreme Court addressed the issue of when postjudgment interest begins accruing. No. 12-0257, 2013 Tex. LEXIS 440 (Tex. June 7, 2013). In that case, the trial court ruled that damages awarded against a doctor were not capped by statute. *Id.* at *3–5. The court of appeals agreed but the supreme court reversed, holding that damages were capped, and remanded to the trial court. *Id.* at *6. The trial court rendered a new judgment on remand (the "remand judgment") that capped damages. *Id.* On appeal, the doctor argued, among other things, that postjudgment interest should not have started to accrue until the date of the remand judgment.

The Texas Supreme Court first noted that "[g]enerally, the interest rate is the same for prejudgment and postjudgment interest" and, for that reason, "the date on which prejudgment interest ceases and postjudgment interest commences is often inconsequential." *Id.* at 23 (citing TEX. FIN. CODE ANN. § 304.103 ("The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment.")). However, the Court noted that the postjudgment interest accrual date was, in fact, consequential in *Phillips* because, while prejudgment interest was subject to the statutory damages cap at issue, postjudgment interest was not. 2013 Tex. LEXIS 440, at *23. The Court then concluded that

> when an appellate court remands a case to the trial court for entry of judgment consistent with the appellate court's opinion, *and the trial court is not required to admit new or additional evidence to enter that judgment*, as is the case here, the date the trial court rendered the original judgment is the "date the judgment is rendered," and postjudgment interest begins to accrue and is calculated as of that date.

*Id.* at *25 (emphasis added).

Citing *Phillips*, Ventling urges that postjudgment interest cannot relate back to the trial court's original 1998 judgment because, unlike in *Phillips*, the trial court heard additional evidence on remand in this case. However, we note that the trial court in this case, like the trial court in *Phillips*, "could have entered a correct judgment [at the time of the original erroneous judgment] but did not." *Id.* at *31.

10

The original erroneous trial court judgment in this case was the trial court's initial denial, on January 9, 1998, of Johnson's original motion for enforcement. The trial court therefore erred by stating in its March 21, 2012 final judgment that "[p]ost-judgment interest at the rate of 5% will accrue on the total amount awarded in this Judgment, from the date of its entry." We reverse that portion of the judgment. Instead, the judgment should provide that postjudgment interest began to accrue as of January 9, 1998.[8] Johnson's first issue is sustained.

## B. Attorney's Fees

### 1. Standard of Review and Applicable Law

Section 38.001 of the civil practice and remedies code provides that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). Neither party disputes that this statute authorized the award of attorney's fees in this case. The awarding of fees under section 38.001 is mandatory if there is proof of the reasonableness of the fees. *Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775 (Tex. App.—Corpus Christi 2007, no pet.) (citing *Great Global Assurance Co. v. Keltex Props.*, 904 S.W.2d 771,

---

Moreover, the *Phillips* Court noted that some appeals courts have suggested that postjudgment interest accrues from the date of the original erroneous judgment "even when the trial court is required to admit additional evidence on remand." *Id.* at *33–34 (citing *Long v. Castle Tex. Prod. Ltd. P'ship*, 330 S.W.3d 749, 753 (Tex. App.—Tyler 2010, pet. granted and abated); *State Dep't of Highways & Pub. Transp. v. Timpson*, 795 S.W.2d 24, 27 (Tex. App.—Tyler 1990, writ denied). The *Phillips* Court explicitly declined to rule on that issue. *Id.* at *36. Accordingly, we do not find Ventling's argument persuasive.

[8] This accrual date does not apply to postjudgment interest on an award of conditional appellate attorney's fees—the omission of which, we will conclude herein, was erroneous. Instead, a judgment awarding postjudgment interest on appellate attorney's fees must provide that the interest begins to accrue "when an appeal is perfected or application is filed, whichever the case may be." *Sw. Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied) (citing *Republic Nat'l Life Ins. Co. v. Beard*, 400 S.W.2d 853, 859–60 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.)), *disapproved on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 675 (Tex. 1999).

11

776 (Tex. App.—Corpus Christi 1995, no pet.) ("A court has discretion to fix the amount of attorney's fees."); *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (noting that statutes providing that a party "may recover" attorney's fees are not discretionary)).

The determination of what is a reasonable fee is a question for the trier of fact. *Id.* Factors to be considered include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2004); *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Mercier*, 214 S.W.3d at 775–76. The court is not required to receive evidence on each of these factors. *Mercier*, 214 S.W.3d at 776 (citing *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet)). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common

12

knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.*

We review the award of attorney's fees for an abuse of discretion. *Id.* at 775 (citing *Bocquet*, 972 S.W.2d at 21; *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)). As noted, a trial court abuses its discretion when it acts arbitrarily and unreasonably, or without reference to guiding rules and principles. *Downer*, 701 S.W.2d at 241–42.

### 2. Evidence

At a hearing on December 9, 2011, Johnson's lead trial and appellate attorney, Bernard Shub, testified as to work that he did on this case over the last fifteen years. Shub testified that Johnson is married to his wife's father; that is, Johnson is Shub's stepmother-in-law. He did not have a written fee agreement with Johnson. Shub explained: "I have not expected [Johnson] to fund the litigation, other than to pay the appellate lawyers.[9] And I've funded the litigation and performed the services in anticipation of the day when I would recover and get an award of attorney's fees."

Prior to this case, most of Shub's experience had been in "insurance-related litigation" and this was one of the first cases that he took on as a solo practitioner in 1997. Shub stated that "[t]his has been a complex interstate collections case from the beginning." He noted that he provided trial court services in the case from 1997 to 2001, from 2007 to 2009, and from 2011 until the date of the hearing. Shub further

---

[9] The "appellate lawyers" referred to by Shub include Thomas Crofts, who testified that he is board-certified in civil appellate litigation and has been practicing appellate law since the mid-1970s. He was retained by Shub to assist in prosecuting Johnson's appeals. Crofts stated that his fees, which were incorporated into the amount that was testified to by Shub, were reasonable and customary. He could not recall whether he had entered into a written fee agreement with either Johnson or Shub.

13

noted that he prosecuted two successful appeals from trial court orders,[10] successfully defended against Ventling's motion to dismiss the second appeal, and successfully moved this Court to rehear the second appeal. *See Johnson II*, 2010 Tex. App. LEXIS 8437, at *1 & *13–14 n.5. According to Shub, the total amount of fees incurred by Johnson in this case was $265,967.09, representing: (1) $68,466 for trial court proceedings that took place between 1997 and 2001[11]; (2) $46,786.76 for the first appeal, from 2001 to 2004; (3) $49,377.50 for trial court proceedings after the first appeal and before the second appeal, from 2007 to 2009; (4) $83,171.83 for the second appeal, from 2009 to 2011; and (5) $18,165 for trial court proceedings following *Johnson II*, up until the date of the hearing.

Shub alleged that "one reason that the case was so demanding and required so much time is Dr. Ventling's decisions about how to litigate what began as a $142,000 case created the need for quite a bit of legal effort." He alleged that "[t]his case has had a bottomless time commitment" in part because Ventling repeatedly raised contractual defenses to enforcement of the alimony obligations that this Court has held were not available to him. *See Johnson II*, 2010 Tex. App. LEXIS 8437, at *22 ("[C]ontractual defenses, such as failure of consideration, are now unavailable to Ventling because the

---

[10] Ventling argues that Johnson did not actually prevail in *Johnson I* because we dismissed that appeal for want of jurisdiction. *See Johnson I*, 132 S.W.3d at 179. That is incorrect. Our opinion in that appeal granted Johnson precisely the relief she was seeking—a declaration that the trial court's 2001 judgment, which purported to invalidate the 1995 divorce decree, was void. *See id.* We dismissed the appeal for want of jurisdiction because "[o]ur jurisdiction extends no further than that of the court from which the appeal is taken." *Id.* (citing *Warner-Lambert Co. v. Mills*, 117 S.W.3d 488, 490 (Tex. App.—Beaumont 2003, no pet.), *rev'd on other grounds*, 157 S.W.3d 424 (Tex. 2005)). But our dismissal of the appeal for want of jurisdiction does not rob our opinion—including its declaration that the 2001 judgment was void—of its binding power. It may seem counterintuitive, but under our rules, an appeal can be "successful" even if it is dismissed by the appellate court.

[11] Shub testified that, in 1997, his client was awarded $2,250 in fees for work done in this case between September and December of that year, but that those fees were not included in his calculation. On cross-examination, Shub recanted this testimony and stated: "It looks like there's billing that's included, sir, yes, sir, so we can take the [$]2,250 out and give you a credit for that."

14

instant proceeding is a collateral attack on the 1995 decree."); *Johnson I*, 132 S.W.3d at 738–39 ("We hold that Ventling's challenge to the enforceability of the decree in this proceeding amounted to an impermissible collateral attack.").

Shub stated that, at the outset of the case, he had nine years of experience as an attorney and charged either $150 or $175 per hour for his services. He became board-certified in civil trial law and personal injury trial law in 1997 and subsequently raised his hourly rate to $350; accordingly to Shub, he applied that rate to all services rendered following the first appeal. Shub testified that, given the complexity of the litigation, these rates were not unreasonable or unusual.

This was not the first time in this case that Shub testified about his fees. Shub conceded that, in a 2001 hearing, he testified that his fees up until that point were only $42,000. However, Shub testified in 2001 that he "had probably under[]billed by about 20 percent." He later revised his figure for fees corresponding to that time period to $68,466. Shub also testified in 2001 that $7,500 would be a reasonable fee for an appeal to this Court if Johnson was the appellee and prevailed on appeal. In 2008, Shub did not testify regarding appellate fees but did submit a proposed judgment conditionally awarding Johnson $7,500 for successfully prosecuting an appeal in this Court. Shub stated: "I have since learned that the cost of appellate work is much higher than that." At the 2011 hearing, he stated that $50,000 for an appeal to this Court and $25,000 for an appeal to the Texas Supreme Court would be reasonable.

On cross-examination, Shub acknowledged that he treated Johnson differently than most clients because she is a member of his family, and that he did not have a

written fee agreement with her. Instead, according to Shub, "I would keep track of my time, and if I could recover attorney's fees at the courthouse, they would be mine."

Ventling's lead trial counsel, William Dudley, testified that the amount Shub requested was neither reasonable nor necessary. He stated that "if you are providing someone legal counsel for something that's unreasonable, you should not be entitled to get a reasonable attorney fee for it. . . . And it is my opinion that to request a fee of $260,000 to collect a contract for $140,000 is not reasonable." Dudley agreed that the case involved "novel" legal issues, but asserted that "[j]ust because something is novel doesn't make it difficult, and just because something is difficult doesn't make it legally complex." He noted that, in any event, "these two parties created" the novel situation. He stated that he believed a total award of $10,000 for trial work "would not be offensive to me as an attorney who practices law." On cross-examination, Shub produced evidence that Dudley had himself received over $42,000 in fees from Ventling over the same time period.

Dudley claimed that it was inappropriate and unreasonable for Shub to have increased his hourly rate during the course of the proceedings without obtaining Johnson's approval.[12] Dudley further stated that $350 per hour was an unreasonable rate for Shub to charge for a family law case in Nueces County. He noted that, though Shub is board-certified in two areas, he is not board-certified in family law.

Ventling's lead appellate counsel, Audrey Vicknair, also testified that $350 was an unreasonable hourly rate in Nueces County. She averred that $83,000 for the prosecution of *Johnson II* is unreasonable and that $50,000 for a third appeal to this

---

[12] Shub did not state whether or not he obtained Johnson's approval for the increased rate; however, because Shub testified that he did not "expect[ Johnson] to fund the litigation," we find it very likely that he did not even seek Johnson's approval.

16

Court would be "frankly, outrageous." She testified that appropriate and reasonable fees would be: $25,000 for the prosecution of the *Johnson II* appeal; $10,000 for a third appeal to this Court; $5,000 for filing a petition for review with the Texas Supreme Court; $10,000 for full briefing on a petition for review; and $7,500 for arguing the merits of a petition for review in Austin.

Ventling argues on appeal that $15,000 was a reasonable amount for Johnson's attorney's fees incurred in the trial court proceedings. He further contends that Johnson was not entitled to any appellate fees because this Court's opinion and mandate in *Johnson II* did not specifically mention "appellate attorney's fees." As noted, the trial court awarded a total of $70,275 in fees and did not award conditional appellate attorney's fees.

### 3. Analysis

We find that the trial court's award of previously-incurred attorney's fees was supported by the evidence and, therefore, not an abuse of discretion. Although the award of $70,275 was far less than the amount requested by Johnson, it was also more than would have been justified had the trial court fully accepted the testimony of Dudley and Vicknair. As noted, Dudley testified that $10,000 would be a reasonable fee for all trial court services rendered since the inception of the case, and that recovery of fees corresponding to the first appeal should be limited to $7,500 because that is the amount Johnson requested at the time the services were rendered. Vicknair testified that $25,000 would be reasonable for the prosecution of *Johnson II*. Thus, the evidence supported an award of previously-incurred attorney's fees as low as $42,500.

17

In any event, when reviewing matters reserved for the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Mercier*, 214 S.W.3d at 775 (citing *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex. 1989)). The trial court was vested with discretion to believe or disbelieve the testimony of counsel as it saw fit, and—though we may not have reached the same conclusion—we may not disturb the ruling.

However, there was no testimony supporting the trial court's failure to award conditional prospective attorney's fees in the event of a third appeal in this case—an event which has now come to fruition. Ventling argues that "the law does not permit the recovery of retroactive appellate fees to the trial court loser." He contends that "[b]ecause Johnson was never the trial court winner, and never the Appellee with a judgment in her favor for contingent appellate attorney[']s fees, this Court could not and cannot initiate an award of appellate fees to her." We disagree that "Johnson was never the trial court winner." In light of our 2004 and 2010 opinions, Johnson was, in fact, the ultimate "winner" in this case, and the judgment on appeal reflects that. Moreover, at the 2011 hearing, attorneys for both parties agreed that an award of conditional prospective attorney's fees was reasonable and warranted here.

We conclude that the trial court abused its discretion by failing to award conditional attorney's fees for this, the third appeal taken from the trial court in this protracted case. Because there was conflicting evidence adduced below as to the precise amount of reasonable and necessary fees, we will remand the cause to the trial court for a determination of the proper amount. Johnson's second issue is sustained in part.

## C.    Court Costs

Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. We review the trial court's award of court costs for abuse of discretion. *Moore v. Trevino*, 94 S.W.3d 723, 729 (Tex. App.—San Antonio 2002, pet. denied).

At the December 9, 2011 hearing, Shub referred to a "summary" of taxable court costs that he prepared, reflecting $5,500 paid on Johnson's behalf in the course of prosecuting this case since 1997. Although Shub apparently tendered the summary to the trial court, Dudley raised multiple evidentiary objections which the trial court sustained. Johnson notes on appeal that the statute regarding the recovery of costs, Texas Civil Practice and Remedies Code section 31.007(a), "clearly does not require a formal presentation of evidence of a party's costs during trial." *Nolte v. Flournoy*, 348 S.W.3d 262, 271 (Tex. App.—Texarkana 2011, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(a) (West 2008). Instead, "[a]ll that seems to be required is that the successful party present . . . an itemized list of costs and fees incurred during the lawsuit." *Nolte*, 348 S.W.3d at 271. But here, no such itemized list appears in the record. Accordingly, we have no choice but to affirm the trial court's admittedly dubious award of $20 in court costs. *See Watkins v. Jones*, 192 S.W.3d 672, 674 (Tex. App.—Corpus Christi 2006, orig. proceeding) ("The burden lay upon [appellant] to supply this Court with a complete record demonstrating that the trial court abused its discretion.") (citing *Univ. of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 202 (Tex. App.—Austin 1991, no writ)).

Johnson's third issue is overruled.

### III. CONCLUSION

We reverse that portion of the trial court's judgment failing to award Johnson conditional prospective appellate attorney's fees, and we remand the cause to the trial court with instructions to determine the reasonable and necessary amount of such fees and to render judgment that Johnson shall recover such fees.[13]  Postjudgment interest at the rate of 5%, compounded annually, shall accrue on this amount as of the date that this appeal was perfected.[14]  *See Sw. Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied) (citing *Republic Nat'l Life Ins. Co. v. Beard*, 400 S.W.2d 853, 859–60 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.)), *disapproved on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 675 (Tex. 1999).

We additionally reverse that portion of the judgment stating that "[p]ost-judgment interest at the rate of 5% will accrue on the total amount awarded in this Judgment, from the date of its entry."  We remand the cause to the trial court with instructions to render judgment in lieu thereof as follows:

- With respect to that portion of the $70,275 past attorney's fees award attributable to prosecution of the *Johnson I* appeal, postjudgment interest at the rate of 5%, compounded annually, shall accrue as of October 22, 2001, the date upon which the *Johnson I* appeal was perfected.  *See id.*

---

[13] Although we are reversing the trial court's judgment only in part, there should be no doubt that Johnson is the "successful" party in this appeal and is therefore entitled to any appellate fees conditioned upon success in this Court.

[14] The record reflects that Johnson perfected the instant appeal on June 18, 2012.

20

- With respect to that portion of the $70,275 past attorney's fees award attributable to prosecution of the *Johnson II* appeal, postjudgment interest at the rate of 5%, compounded annually, shall accrue as of September 14, 2009, the date upon which the *Johnson II* appeal was perfected. *See id.*

- As to all amounts awarded in this judgment for which a postjudgment interest accrual date has not been specified, postjudgment interest at the rate of 5%, compounded annually, shall accrue as of January 9, 1998.

Because the trial court did not specify what portions of the $70,275 attorney's fees award were attributable to the *Johnson I* and *Johnson II* appeals, respectively—and because we are unable to discern those amounts from our examination of the record—we also remand the cause to the trial court for that purpose. Postjudgment interest shall then accrue on those amounts as set forth in this opinion.

The remainder of the trial court's judgment is affirmed.


DORI CONTRERAS GARZA,
Justice

Delivered and filed the
27th day of June, 2013.