# IN THE SUPREME COURT OF TEXAS

══════════

No. 14-0095

══════════

WAYNE VENTLING, PETITIONER,

v.

PATRICIA M. JOHNSON, RESPONDENT

══════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

══════════════════════════════════════════════

**Argued January 13, 2015**

JUSTICE LEHRMANN delivered the opinion of the Court.

A dispute over an agreed divorce decree has spawned eighteen years (and counting) of litigation and an accompanying procedural quagmire. Wayne Ventling initiated divorce proceedings in 1995, seeking to end a common-law marriage to Patricia Johnson. After entering into an agreement that included contractual alimony payments to Johnson, Ventling took the position that he and Johnson had in fact never been married and that his contractual obligations were therefore invalid. The ensuing litigation, commenced in 1997, is now on its third appeal.[1] The remaining issues are (1) when postjudgment interest began accruing in light of the multiple appeals, (2) whether

---

[1] For clarity, we will refer to the three court of appeals opinions in the order they were issued: *Johnson v. Ventling*, 132 S.W.3d 173 (Tex. App.—Corpus Christi 2004, no pet.) (*Johnson I*); *Johnson v. Ventling*, No. 13-09-00563-CV, 2010 WL 4156459 (Tex. App.—Corpus Christi Oct. 21, 2010, no pet.) (mem. op.) (*Johnson II*); *Johnson v. Ventling*, ___ S.W.3d ___ (Tex. App.—Corpus Christi 2013) (*Johnson III*).

the trial court improperly denied Johnson both prejudgment and postjudgment interest for a portion of the proceedings, and (3) whether the trial court erred in denying Johnson's request for conditional appellate attorney's fees.

After carefully reviewing the record, we hold: (1) June 16, 2009 is the date of the final judgment for purposes of calculating prejudgment and postjudgment interest on the award of damages on Johnson's underlying claim; (2) March 21, 2012 is the date of the final judgment for purposes of calculating postjudgment interest on the severable award of past attorney's fees; (3) the trial court erred in creating a gap between the accrual of prejudgment and postjudgment interest; and (4) the trial court erred in denying Johnson's request for conditional appellate attorney's fees because Johnson was a prevailing party and submitted evidence of such fees. Accordingly, we affirm the court of appeals' judgment in part, reverse it in part, and remand the case to the trial court for further proceedings.

## I. Background

In January 1995, Ventling filed for divorce from Johnson, claiming that they had a common-law marriage. In April of that year, the trial court signed a Final Decree of Divorce in which the parties agreed to a property division. The decree ordered a division of the marital estate, which required Ventling to pay Johnson a $25,537 lump sum plus a total of $210,000 in contractual alimony in eighty-four monthly installments. In July 1997, Ventling stopped making the monthly payments, resulting in litigation that continues to this day.

## A. Initial Proceedings and *Johnson I*

Johnson filed an enforcement motion in September 1997, seeking a judgment for the $25,537 lump-sum payment awarded in the decree, as well as $7,500 in past-due alimony and the accelerated $135,000 remaining balance (for a total of $142,500 in alimony), plus interest, attorney's fees, and costs. Ventling answered with a general denial and raised the affirmative defenses of fraud, accident, mistake, collateral estoppel, and judicial estoppel. He also moved to nonsuit his original petition for divorce from 1995, sought rescission of the parties' agreement, and requested that the trial court vacate the divorce decree. On January 9, 1998, the trial court denied Johnson's enforcement motion "without prejudice to reconsideration of these issues by the Court," but granted Johnson's request for attorney's fees and ordered the parties to mediate their dispute. Johnson did not appeal this order.

Mediation proved unsuccessful, and in August 1999 Johnson moved for summary judgment on her enforcement motion. Ventling's response largely mirrored his previous response to the enforcement motion, and he again moved to nonsuit his divorce petition.[2] The trial court denied Johnson's summary-judgment motion and granted Ventling's motion for nonsuit. On July 25, 2001, the trial court signed a final judgment denying all relief requested by Johnson, including her enforcement motion. The court found that Ventling and Johnson were never married,[3] concluded that the agreed divorce decree was an interlocutory order subject to the court's plenary power, and

---

[2] In both his 1997 and 1999 responses, Ventling asserted that the decree was an interlocutory order still subject to the trial court's plenary power.

[3] Johnson stipulated that she and Ventling were never married.

vacated the decree.  The court also awarded Ventling attorney's fees.  Following an unsuccessful

attempt to modify the judgment, Johnson appealed.

On April 1, 2004, the court of appeals concluded in *Johnson I* that the 1995 divorce decree

was a final judgment, that the trial court's plenary power expired thirty days after the court signed

the decree, and that Ventling's challenge to its enforceability was an impermissible collateral attack.

132 S.W.3d at 178–79.  Therefore, the court of appeals held that the trial court had no authority to

modify the original disposition of property by vacating the decree.  *Id.* at 179.  Because the trial court

lacked jurisdiction to vacate the decree, the court of appeals held that the 2001 judgment was void

and dismissed the appeal for want of jurisdiction.  *Id.*  The court of appeals noted that the trial court

"[a]rguably" had jurisdiction to deny Johnson's enforcement motion, but declined to reach the merits

of Johnson's challenge to that denial.  *Id.* at 179 n.4.

## B. Continued Litigation and *Johnson II*

In April 2005, a year after the court of appeals dismissed the appeal in *Johnson I*, Johnson

filed suit in Iowa, where Ventling resided, to domesticate the Texas decree in an attempt to collect

on the judgment in Iowa.  Almost two years later, in January 2007,[4] the Iowa court ruled that the

agreed alimony had not been reduced to a final judgment that could be enforced in Iowa, granting

Ventling a stay as to these amounts.  However, the Iowa court allowed enforcement of the part of

the decree that awarded Johnson the $25,537 lump sum.

---

[4] This delay was not caused by either party.  The Iowa court opened its order by "apologiz[ing] to the parties
and their counsel for the delay in this ruling."

In October 2007, Johnson renewed her enforcement motion in Texas in an effort to reduce the unpaid $142,500 in contractual alimony to a final, enforceable judgment. She also requested postjudgment interest dating back to August 1997, as well as damages for adverse tax consequences and attorney's fees. Ventling asserted defenses of fraud, accident, mistake, estoppel, illegality, res judicata, statute of limitations, failure of consideration, and statute of frauds.

On June 16, 2009, the trial court rendered judgment denying all relief requested by Johnson. The court found that the 1995 decree was not void but that its alimony provision was unenforceable. Johnson again appealed, arguing that the contractual alimony provision was enforceable and that she was entitled to judgment on the amount of alimony due ($142,500), as well as interest and attorney's fees.[5]

On October 21, 2010, the court of appeals reversed, holding that, because the decree was not void and the contractual alimony terms were incorporated into the judgment of divorce, those provisions were binding on the parties. *Johnson II*, 2010 WL 4156459, at *6–7. The court of appeals remanded the case to the trial court, instructing it to grant Johnson's enforcement motion and award her (1) $142,500 in unpaid contractual alimony, (2) appropriate prejudgment interest, and (3) reasonable attorney's fees and court costs. *Id.* at *1, *7.

---

[5] Johnson did not challenge the trial court's judgment to the extent it denied her request for the lump-sum property settlement, which she agreed had already been awarded in Iowa, or her request for damages for adverse tax consequences.

**C. Judgment on Remand and *Johnson III*: The Current Appeal**

Following the court of appeals' decision in *Johnson II*, Johnson moved the trial court for an award of: (1) $145,935.62, consisting of the $142,500 in unpaid contractual alimony and $3,435.62 in prejudgment interest accruing on that amount from September 23, 1997 (the date Johnson asserted that she initially moved to enforce the decree)[6] until December 19, 1997 (the date the trial court held its initial hearing on the enforcement motion); (2) postjudgment interest accruing on the $142,500 from December 20, 1997 until the judgment was satisfied; (3) past attorney's fees ($250,402.09) and costs ($6,970.61), plus postjudgment interest on those amounts; and (4) conditional attorney's fees in the event of a third appeal. Ventling stipulated to the $3,435.62 in prejudgment interest, but disputed Johnson's entitlement to postjudgment interest, arguing that the court of appeals had instructed the trial court to award only prejudgment interest and that postjudgment interest was available only once an actual judgment was rendered in Johnson's favor. Ventling also disputed the amount of the requested attorney's fees.

The trial court held a hearing on Johnson's claims for attorney's fees and costs, which included testimony regarding the requested conditional appellate fees. On February 21, 2012, the trial court rendered judgment granting Johnson's enforcement motion and awarding Johnson (1) $142,500 in unpaid contractual alimony, (2) $3,435.62 in prejudgment interest, (3) $70,275 in past attorney's fees, (4) $20 in court costs, and (5) postjudgment interest accruing at a rate of six

---

[6] We note that the record reflects that Johnson actually filed her enforcement motion on September 26, 1997.

percent on the entire amount from February 21, 2012.[7] One month later, on March 21, 2012, the trial court signed an amended judgment, which was identical to the February 21 judgment except that the postjudgment interest rate was adjusted from six percent to five percent. The trial court agreed with Ventling that retroactive postjudgment interest was precluded under the court of appeals' opinion. After Johnson unsuccessfully moved the trial court to further modify its judgment, this appeal—her third—followed.[8]

In the court of appeals, Johnson argued that the trial court erred in its award of interest, attorney's fees, and costs. *Johnson III*, ___ S.W.3d at ___. On December 19, 2013, the court of appeals affirmed the trial court's judgment as to past attorney's fees and costs, but reversed as to the judgment's failure to award retroactive postjudgment interest on the alimony award or conditional appellate fees. *Id.* at ___. Relying on our decision in *Phillips v. Bramlett*, 407 S.W.3d 229 (Tex. 2013), the court of appeals held that the trial court could have, and should have, rendered judgment awarding Johnson $142,500 in contractual alimony on January 9, 1998—the date the court first ruled on her enforcement motion—based on the evidence then available. ___ S.W.3d at ___ n.8. Therefore, the court concluded that postjudgment interest began to accrue on that amount as of January 9, 1998. *Id.* at ___. However, with respect to past attorney's fees and costs, the court noted

---

[7] The total liquidated amount awarded as of February 21 was $216,230.62. On March 9, Ventling deposited $216,834.80 into the court's registry, which covered the awarded amount plus 6% postjudgment interest on that amount through the date of deposit.

[8] On April 10, 2012, Johnson requested that the trial court release the now-undisputed $142,500 in principal from the court's registry. The court released the funds to Johnson on April 25.

that no judgment was rendered for such fees and costs until February 21, 2012, and held that postjudgment interest on those amounts accrued from that date. *Id.* at ___ n.8.

In summary, in *Johnson III* the court of appeals (1) reversed with respect to postjudgment interest on the $142,500 damage award, holding that such interest began accruing on January 9, 1998; (2) reversed and remanded with respect to postjudgment interest on past attorney's fees and costs, instructing the trial court to award such interest at five percent accruing as of February 21, 2012; (3) reversed the denial of Johnson's request for conditional appellate attorney's fees and remanded for a determination of the amount of those fees, with postjudgment interest of five percent accruing on that amount as of the date the appeal was perfected; and (4) affirmed the remainder of the trial court's judgment. *Id.* at ___. Ventling filed a petition for review, arguing that the trial court's judgment was correct because (1) no final judgment was entered until 2012, (2) postjudgment interest cannot start accruing before the date of the final judgment, and (3) Johnson is not entitled to attorney's fees for this appeal.[9]

## II. Interest Analysis

### A. Interest on a Money Judgment

Prejudgment interest and postjudgment interest compensate a judgment creditor for the lost use of money due as damages. *Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 77 (Tex. 2014) (citing *Phillips*, 407 S.W.3d at 238). Prejudgment interest, which accrues from the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed,

---

[9] Johnson did not file a petition for review in this Court and does not challenge the portions of the court of appeals' judgment affirming the trial court as to past attorney's fees and court costs.

is computed as simple interest and runs until the day before the judgment. TEX. FIN. CODE § 304.104. Postjudgment interest, which begins accruing on the date the judgment is rendered, not only compounds annually but also accrues on prejudgment interest. *Id.* §§ 304.003(a), .005(a), .006; *see also Long*, 426 S.W.3d at 77. Accordingly, the date of the judgment can significantly affect the amount ultimately recovered.

## B. Which Judgment Controls?

### 1.

"[P]ostjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied." TEX. FIN. CODE § 304.005(a). We have consistently held that section 304.005's reference to a "judgment" is to the trial court's judgment. *E.g.*, *Long*, 426 S.W.3d at 78; *Phillips*, 407 S.W.3d at 239; *Danziger v. San Jacinto Sav. Ass'n*, 732 S.W.2d 300, 305 (Tex. 1987). We have also explained that "[a] judgment that accrues postjudgment interest must necessarily be a final judgment." *Long*, 426 S.W.3d at 78. Except as specifically otherwise provided by law, there may be only one final judgment. TEX. R. CIV. P. 301; *see also Long*, 426 S.W.3d at 78.

When an appellate court's remand results in multiple trial court judgments, the question becomes: which judgment controls for the purpose of postjudgment-interest accrual? The answer, we have recently clarified, depends on whether additional evidence is required on remand. In *Phillips*, we held that

> when an appellate court remands a case to the trial court for entry of judgment consistent with the appellate court's opinion, and the trial court is not required to admit new or additional evidence to enter that judgment, . . . the date the trial court

9

entered the original judgment is the "date the judgment is rendered," and postjudgment interest begins to accrue . . . as of that date.

407 S.W.3d at 239. In *Long*, we addressed the issue left open in *Phillips*: whether postjudgment interest accrues from the date of the original judgment even when the trial court must reopen the record in order to render judgment on remand. 426 S.W.3d at 77. We answered this question in the negative, confirming that postjudgment interest accrues from the date of the trial court's original, erroneous judgment only when the appellate court renders, *or could have rendered*, judgment. *Id.* at 80.[10] Thus, if on remand the trial court determines that it must reopen the record, postjudgment interest will begin to accrue on the date the subsequent judgment is rendered. *Id.* at 81. The rationale behind this rule, we explained, is that "a claimant is entitled to postjudgment interest from the judgment date once the trial court possesses a sufficient record to render an accurate judgment." *Id.* at 76.

Finally, in *Long* we discussed the various mechanisms that parties and courts have at their disposal to affect the accrual of postjudgment interest, including severance, offers of proof, and bills of exception. *Id.* at 82 & 83 n.20. A court may sever claims and different grounds of recovery before submission to the trier of fact, and both trial and appellate courts may order retrial on only the part of a matter affected by error unless doing so would result in unfairness to the parties. *Id.* (citing TEX. R. CIV. P. 41, 320, and TEX. R. APP. P. 44.1(b)). We elaborated on these procedures by discussing prior cases in which we exercised our power to partially render and to remand severable

---

[10] In discussing this exception, we cited Texas Rule of Appellate Procedure 43.3, which states: "[w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial."

claims and issues. *Id.* at 82–83. For example, in *Great American Reserve Insurance Co. v. Britton*, we affirmed the court of appeals' judgment except for the issue of attorney's fees, which we severed and remanded to the trial court for a new trial. 406 S.W.2d 901, 907 (Tex. 1966). Later, in *Danziger*, we reversed the trial court's judgment and rendered judgment in part, specifying that postjudgment interest would accrue from the date of the trial court's original judgment on the rendered amount, but we severed another claim and the related issue of attorney's fees and remanded them to the trial court for further proceedings. 732 S.W.2d at 305.

**2.**

Ventling argues that, because the trial court admitted additional evidence following the court of appeals' remand in *Johnson II*, the final judgment in this case was rendered on March 21, 2012, and postjudgment interest can accrue only from that date. Along the same lines, he asserts that the court of appeals erred in awarding postjudgment interest accruing from different judgment dates because, unlike the cases we discussed in *Long*, no claim has been severed in this case.

Johnson responds that the trial court's 2012 judgment granting her enforcement motion resulted in a final judgment for postjudgment-interest purposes on the date the trial court initially denied the motion—January 9, 1998—because on that date the trial court could have, and should have, rendered judgment for $142,500 in damages without the need for additional evidence. She asserts that a different accrual date should apply to the trial court's award of attorney's fees, which required the court to hear new evidence.

We first examine Johnson's contention that postjudgment interest on the award of alimony began to accrue on January 9, 1998, the date the trial court originally denied the enforcement motion.

11

In agreeing with Johnson, the court of appeals correctly noted that when an appellate court reverses and renders or could have rendered, "the accrual of postjudgment interest . . . relates back to the date of the original erroneous trial court judgment." *Johnson III*, ___ S.W.3d at ___. The court went on to hold that, because the trial court "could have, and should have, rendered judgment awarding Johnson \$142,500 in damages on January 9, 1998, based on the evidence adduced as of that date," *Phillips* mandates postjudgment-interest accrual from that date. *Id.* at ___ & n.8. We disagree.

As noted above, when an appellate court reverses and renders or could render judgment, postjudgment interest accrues from the date of the original, erroneous judgment. *Phillips*, 407 S.W.3d at 239. The January 9, 1998 order awarded Johnson no relief, and the court of appeals could not have taken any action on the order because, even assuming it was a final judgment for appeal purposes, Johnson did not appeal it. Instead, the parties continued to litigate the enforcement motion following the order's issuance. In any event, Johnson concedes that the 1998 order was interlocutory and thus was *not* a final, appealable judgment.[11] *See Long*, 426 S.W.3d at 78 (noting that a judgment's finality for postjudgment-interest purposes is similar to a judgment's finality for the purpose of appeal). An interlocutory order is not a "judgment" that may accrue postjudgment interest within the meaning of section 304.005 of the Texas Finance Code.

Alternatively, Johnson argues that the trial court's July 2001 judgment—which Johnson did appeal and which led to the court of appeals' opinion in *Johnson I*—is the final judgment for the purpose of postjudgment-interest accrual on the alimony award. Again, we disagree because there

---

[11] During the 2008 trial court hearings on the enforcement motion, Johnson's trial counsel admitted that the 1998 order was not a final judgment: "we're basically in a situation there [sic] has never been a final judgment on the original Motion to Enforce."

12

was no judgment from which postjudgment interest could accrue. In *Johnson I*, the court of appeals held that the trial court had no jurisdiction to render the 2001 judgment purporting to vacate the divorce decree, declared the judgment void, and accordingly dismissed Johnson's appeal for want of jurisdiction. 132 S.W.3d at 179. Notably, Johnson did not petition this Court to review the court of appeals' holding that the judgment was void and that court's corresponding refusal to address the merits of the denial of her enforcement motion. Accordingly, the void 2001 judgment was a nullity and "cannot under any circumstances be a final judgment." *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183, 188 (Tex. 1964) (emphasis omitted); *see also Figueroa v. Davis*, 318 S.W.3d 53, 67–68 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that a judgment that had been vacated when a new trial was granted could not be considered for the purpose of calculating prejudgment interest because such judgment became a nullity).

We turn next to the trial court's June 16, 2009 judgment, which was rendered in Ventling's favor and which the court of appeals reversed and remanded in *Johnson II*. On remand, the trial court received additional testimony and exhibits solely on Johnson's claims for attorney's fees and costs before rendering judgment in 2012. Johnson relies on *Danziger* to argue that, because this evidence was irrelevant to the merits of her alimony claim, postjudgment interest on the damages awarded for that claim began accruing even though the parties continued to litigate attorney's fees. Ventling does not dispute that the additional evidence was limited to attorney's fees and costs. He argues that, applying the severance principles discussed in *Long*, the trial court's admission of *any* additional evidence on remand without a formal severance requires the conclusion that postjudgment interest may not accrue before the trial court's final judgment on remand in 2012.

13

We agree with Johnson. In *Johnson II*, the court of appeals remanded the case with instructions to the trial court to enter judgment granting Johnson's enforcement motion and awarding her $142,500 in unpaid contractual alimony. 2010 WL 4156459, at *1, *7. The trial court's only task on remand with respect to the merits of Johnson's alimony claim was the ministerial act of entering the judgment as instructed. Thus, the court of appeals effectively rendered the judgment the trial court should have rendered on June 16, 2009, and it did so because no further proceedings or evidence was necessary as to Johnson's only substantive claim. Under *Long*'s rationale—that "a claimant is entitled to postjudgment interest from the judgment date once the trial court possesses a sufficient record to render an accurate judgment"—Johnson is entitled to postjudgment interest on the alimony award from June 16, 2009. 426 S.W.3d at 76.

That the court of appeals also remanded the issue of attorney's fees for further proceedings, which did require the record to be reopened, does not foreclose this holding. We have held that a claim for attorney's fees is a severable claim. *Britton*, 406 S.W.2d at 907 (affirming the trial court's judgment in part, but severing and remanding the claim for attorney's fees). While the court of appeals did not use the term "sever," for all practical purposes that is what the court did in remanding Johnson's claims for attorney's fees and costs separately from the alimony claim. Accordingly, we hold that postjudgment interest on Johnson's $142,500 alimony award accrues from June 16, 2009, and postjudgment interest on Johnson's award of $70,275 in past attorney's fees and $20 in costs

14

accrues from March 21, 2012, the date the trial court entered its final judgment following the presentation of additional evidence on these issues.[12] *Long*, 426 S.W.3d at 80.

### C. Prejudgment Interest

The trial court's March 2012 judgment—the one currently on appeal—awarded Johnson $3,435.62 in prejudgment interest on the alimony award covering the period from September 23, 1997 to December 19, 1997,[13] and postjudgment interest accruing from March 21, 2012, resulting in an interest gap of over fourteen years. Ventling asserts that Johnson waived her right to seek additional prejudgment interest because she stipulated that amount to be $3,435.62. Johnson responds that she specified that amount because it comported with her argument that postjudgment interest began to accrue as early as December 1997.

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (internal quotation marks and citation omitted). As noted above, "prejudgment interest accrues . . . ending on the day preceding the date judgment is rendered." TEX. FIN. CODE § 304.104; *see also Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006) ("Because the trial

---

[12] The trial court's February 21, 2012 judgment cannot be a final judgment because it was amended on March 21, and the amended judgment was the basis of the underlying appeal. *See Long*, 426 S.W.3d at 78 ("Finality for the purpose of appeal bears the closest resemblance to finality for the purpose of accruing postjudgment interest."); *Black v. Shor*, 443 S.W.3d 170, 176 (Tex. App.—Corpus Christi 2013, pet. denied) ("When the trial court signs an amended order, the original order becomes 'a nullity.' As the original judgment ceases to have legal effect, only the amended judgment can support an appeal.").

[13] These were the dates pleaded by Johnson.

court signed its judgment on January 15, 2003, the [prejudgment interest] period ended on January 14.").[14]

The court of appeals addressed Ventling's waiver argument as follows:

[W]e disagree with Ventling that the trial court could not have awarded any more than . . . the amount of prejudgment interest Johnson requested in her motion. Johnson's motion specifically stated that she believed she was entitled to judgment as of December 19, 1997, and that the pre- and postjudgment interest amounts she requested therein were calculated as of that date. If the postjudgment interest began accruing, as Ventling asserted, on the date the judgment on appeal was rendered—March 21, 2012—then prejudgment interest must have accrued *until* that date.

___ S.W.3d at ___ (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts.")). We agree with this rationale. Johnson has consistently argued that she is entitled to prejudgment interest on the alimony award until the date of judgment; the parties have simply disputed what that date is. Accordingly, we hold that the trial court abused its discretion by denying Johnson prejudgment interest for the years leading up to the June 16, 2009 final judgment and that the award of prejudgment interest must be adjusted accordingly.

### III. Attorney's Fees for This Appeal

Finally, we turn to the issue of conditional appellate attorney's fees. Johnson requested and was awarded attorney's fees under Texas Civil Practice and Remedies Code section 38.001 as the prevailing party on a breach-of-contract claim. She also requested, but was denied, conditional appellate attorney's fees in the event of an appeal. This case presents an unusual situation because

---

[14] Texas common-law principles governing prejudgment interest align with the Texas Finance Code. *See Johnson & Higgins*, 962 S.W.2d at 528.

Johnson, the prevailing party in the trial court, is seeking appellate attorney's fees for pursuing rather than defending this appeal. Both parties presented evidence in the trial court on prospective appellate fees. We must determine whether, under the circumstances presented here, the trial court erred in denying Johnson's request for appellate attorney's fees.

Ventling argues that Johnson cannot recover appellate fees for prosecuting the appeal, as appellate attorney's fees are available only upon the prevailing party's successful *defense* of a judgment. He further contends that, even if Johnson may seek attorney's fees incurred in appealing a favorable trial court judgment, she did not prevail on her appeal because the court of appeals overruled her challenges to the trial court's rulings with respect to past attorney's fees, court costs, and prejudgment interest.[15] He argues that if we reverse the court of appeals' judgment with respect to the accrual of postjudgment interest, as we indeed are doing, Johnson will not have prevailed in any aspect of her appeal.[16]

To recover attorney's fees under section 38.001, a party must prevail on the underlying claim and recover damages. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). "Whether a party prevails turns on whether the party prevails upon the court to

_____

[15] This characterization of the court of appeals' opinion is not entirely accurate. As noted above, the court of appeals did not overrule Johnson's challenge to the trial court's denial of additional prejudgment interest. Rather, it sustained Johnson's challenge to the award of postjudgment interest and noted that, regardless of when postjudgment interest began accruing, she was entitled to prejudgment interest until that date. ___ S.W.3d at ___.

[16] Ventling also claims that our decision in *Varner v. Cardenas* bars an appellate court from initiating an award of appellate attorney's fees when the trial court did not award such fees because that would in effect constitute two trials on attorney's fees. *See* 218 S.W.3d 68, 69–70 (Tex. 2007). *Varner* does not stand for that proposition. Rather, in *Varner* we refused to allow a "second trial" on the issue of attorney's fees on appeal because Varner had introduced no evidence of such fees in the trial court. *Id.* Ventling does not dispute that Johnson presented evidence of conditional appellate attorney's fees to the trial court, and *Varner* does not bar us from reviewing the trial court's decision based on the evidence before it.

award it something, either monetary or equitable." *Id.* at 655; *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").

Under section 38.001, the trial court has no discretion to deny attorney's fees when presented with evidence of the same. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *see also, e.g.*, *Brent v. Field*, 275 S.W.3d 611, 622 (Tex. App.—Amarillo 2008, no pet.) ("Under section 38.001, an award of reasonable attorney's fees is mandatory if there is proof of the reasonableness of the fees. A Court possesses discretion to determine the amount of attorney's fees, but it lacks discretion to deny attorney's fees if they are proper under section 38.001."). If trial attorney's fees are mandatory under section 38.001, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *See Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (per curiam) (remanding for retrial on appellate attorney's fees under section 38.001 when there was some evidence to support an award); *see also, e.g.*, *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 198–99 (Tex. App.—Fort Worth 2012, no pet.) (holding that if an award of trial attorney's fees is mandatory under section 38.001, then an award of appellate attorney's fees is likewise mandatory).

Turning to Ventling's arguments, we first consider whether a prevailing party in the trial court may be entitled to appellate attorney's fees as a successful appellant. To support his argument that such a party may not recover appellate fees, Ventling cites cases holding merely that appellate attorney's fees must be conditioned upon a successful appeal, as a party may not be penalized for

18

successfully appealing error occurring in a lower court's judgment.[17]  These cases do not support

Ventling's position.  Further, we note that chapter 38 "shall be liberally construed to promote its

underlying purpose." TEX. CIV. PRAC. & REM. CODE § 38.005.  We have explained that this purpose

is to "encourage contracting parties to pay their just debts and discourage . . . vexatious,

time-consuming and unnecessary litigation." *Gates v. City of Dallas*, 704 S.W.2d 737, 740 (Tex.

1986) (construing chapter 38's predecessor); *see also 1/2 Price Checks Cashed v. United Auto Ins.

Co.*, 344 S.W.3d 378, 388 (Tex. 2011) ("Applying section 38.001 here would [promote its

underlying purpose]—it would allow a plaintiff with a small but valid contract claim to recoup its

full amount of damages, . . . so that the aggrieved party may be put in as good a position as if the

other party had fully performed." (internal quotation marks and citation omitted)).

Thus, although the case law has developed in the context of the much more common scenario

in which a prevailing trial court party seeks appellate fees for successfully *defending* an appeal, no

precedent conditions an award of appellate attorney's fees upon these circumstances.  Rather, chapter

38's underlying purposes—to avoid penalizing a party for prosecuting a meritorious appeal and to

discourage "vexatious, time-consuming and unnecessary litigation"—support the conclusion that

Johnson should not be precluded from recovering attorney's fees for this appeal.  As we held above,

the trial court had no discretion to deny Johnson any form of interest for fourteen years, and it also

erred in not awarding her postjudgment interest on the alimony award between 2009 and 2012.  It

---

[17] *See Solomon v. Steitler*, 312 S.W.3d 46, 59 (Tex. App.—Texarkana 2010, no pet.); *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Spiller v. Spiller*, 901 S.W.2d 553, 560 (Tex. App.—San Antonio 1995, writ denied); *Rittgers v. Rittgers*, 802 S.W.2d 109, 115 (Tex. App.—Corpus Christi 1990, writ denied).

would directly contradict the purposes we just outlined to hold that she may not recover attorney's fees incurred in successfully appealing the trial court's error.

We recognize that Johnson has not fully prevailed on appeal, most notably with respect to her challenge to the amount of past attorney's fees awarded and her assertion that postjudgment interest began accruing in 1998. However, she successfully argued that she is entitled to a significant amount of prejudgment interest—as well as additional postjudgment interest—that the trial court failed to award her and therefore at least partially prevailed on her appeal. *See KB Home Lone Star*, 295 S.W.3d at 653; *see also Farrar*, 506 U.S. at 111–12. And both parties presented evidence in the trial court on the proper amount of attorney's fees for this appeal. Therefore, while the trial court has discretion as to the amount of reasonable and necessary appellate attorney's fees, it had no discretion to award Johnson no fees, and we affirm the court of appeals' judgment with respect to this issue.[18]

However, we partially disagree with the court of appeals with respect to its award of postjudgment interest on Johnson's conditional appellate fees. The court of appeals awarded Johnson postjudgment interest accruing from the date Johnson perfected her appeal. *Johnson III*, ___ S.W.3d at ___. In doing so, it relied on *Republic National Life Insurance Co. v. Beard*, 400 S.W.2d 853, 859–60 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.) (holding that postjudgment interest on an award of conditional appellate fees did not begin to run until the appeal

---

[18] We note that Ventling chose to take the position that Johnson was not entitled to *any* interest for a period of more than fourteen years. We also note that Johnson focused her appeal on arguing that she was entitled to postjudgment interest from 1998, with only two pages of her brief in the court of appeals and one page in her brief to this Court devoted to the interest gap. We leave to the trial court's discretion the proper amount of reasonable appellate fees under the circumstances and evidence presented.

was perfected), and *Southwestern Bell Telephone Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied) (holding that the trial court erred in awarding postjudgment interest on appellate attorney's fees from the date of the trial court's judgment), *disapproved on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668 (Tex. 1999).[19]  As discussed below, we decline to adopt the rule utilized in these two opinions.

An award of conditional appellate attorney's fees to a party is essentially an award of fees that have not yet been incurred and that the party is not entitled to recover unless and until the appeal is resolved in that party's favor.  In line with the nature of these fees, the Fourteenth Court of Appeals has held that "because an award of appellate attorney's fees depends on the outcome of the appeal, it is not a final award until the appeal is concluded and the appellate court issues its final judgment."  *Watts v. Oliver*, 396 S.W.3d 124, 134–35 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *accord Protechnics Int'l, Inc. v. Tru-Tag Sys., Inc.*, 843 S.W.2d 734, 736 (Tex. App.—Houston [14th Dist.] 1992, no writ).  We agree with and adopt this reasoning, which presents a limited exception to the general rule that the "judgment" for postjudgment interest purposes is the trial court's judgment.  *Long*, 426 S.W.3d at 78.  Accordingly, we hold that an award for conditional appellate attorney's fees accrues postjudgment interest from the date the award is made final by the appropriate appellate court's judgment.  *See* TEX. FIN. CODE § 304.005(a) ("[P]ostjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the

---

[19] At least one other court of appeals has adopted this rule.  *See D.R. v. J.A.R.*, 894 S.W.2d 91, 97 (Tex. App.—Fort Worth 1995, writ denied).

21

judgment is rendered and ending on the date the judgment is satisfied."); *Long*, 426 S.W.3d at 78 (noting that "[a] judgment that accrues postjudgment interest must necessarily be a final judgment").

In sum, then, Johnson presented evidence of conditional appellate attorney's fees in the trial court—both for an appeal to the court of appeals and an appeal to this Court. Accordingly, the trial court erred in failing to award such fees. Further, in the event that the trial court takes no additional evidence on this issue, Johnson is entitled to (1) postjudgment interest on the award of fees incurred in the court of appeals beginning on December 19, 2013, the date of the court of appeals' final judgment in *Johnson III*, and (2) postjudgment interest on the award of fees incurred in this Court from the date of this opinion and judgment.

## IV. Conclusion

We reverse the portion of the court of appeals' judgment regarding postjudgment interest and hold that, on the $142,500 alimony award, Johnson was entitled to (1) prejudgment interest from the date she filed her enforcement motion through June 15, 2009, and (2) postjudgment interest from June 16, 2009 until the date the judgment is satisfied. We further hold that Johnson is entitled to postjudgment interest on the award of past attorney's fees and costs from March 21, 2012, and we remand to the trial court for rendition of judgment in accordance with this opinion.[20]

We affirm the portion of the court of appeals' judgment reversing the trial court's erroneous denial of Johnson's request for conditional appellate attorney's fees, but we reverse the court's award of postjudgment interest on these amounts. To make unmistakably clear that appellate attorney's

---

[20] We note that this calculation must take into account Ventling's $216,834.80 payment into the trial court's registry on March 9, 2012. No postjudgment interest may accrue on that amount on or after that date.

fees for this third appeal is the only remaining issue that might require additional evidence, we sever and remand this issue to the trial court to determine the appropriate amount of appellate fees, leaving to the trial court's discretion whether to reopen the record on this issue. In the event the record is not reopened, postjudgment interest shall accrue from December 19, 2013 with respect to the amount awarded for the appeal to the court of appeals, and from the date our judgment is rendered as to the amount awarded for the appeal to this Court.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 8, 2015