

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00366-CV

George Michael **WELCH**,
Appellant

v.

Felix **LOPEZ** and Summerlyn Lopez,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI12509
Honorable Norma Gonzales, Judge Presiding

Opinion by: Adrian A. Spears II, Justice

Sitting: Irene Rios, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: April 15, 2026

AFFIRMED

George Michael Welch argues that the trial court erred in failing to award him attorney's

fees. We affirm.

### BACKGROUND

In 2021, Welch and Appellees Felix and Summerlyn Lopez ("the Lopezes") entered into

an owner-financed agreement whereby Welch agreed to sell commercial property ("the Subject

Property") to the Lopezes. The agreement provided for a sales price of $200,000 with the following

payment schedule: (1) a $20,000 down payment; (2) $20,000 on May 1, 2022; (3) $20,000 on May 1, 2023; (4) $20,000 on May 1, 2024, (5) $20,000 on May 1, 2025; and (6) a "Balloon Payment" of $100,000 on May 1, 2026. The agreement further provided that a "late fee of 10% will be assessed if payment is 10 days late" and that "[n]o interest will be charged if payment schedule is adhered to." However, "[a] 5% interest fee will be charged if payment schedule is not adhered to, attached to the current payment due." "Furthermore, if the Grantee [Lopez] is 91 days late, [f]oreclosure procedures will begin and expenses incurred will be at the Grantee's expense. All monies and improvements attached to the property will revert to Grantor [Welch]."

The agreement further provided that the Lopezes would allow Welch "continued access, not to exceed the designed [sic] time period of two (2) years, from the execution of this agreement." "This time will be utilized for removing Farm Tractors and Implements, tools and misc [sic] construction equipment and trailers." According to the agreement, Welch "will also clean-out shop and property."

On May 1, 2023, the Lopezes failed to make a payment of $20,000 as required by the agreement. Welch testified that he reminded Felix Lopez about the payment on May 5, 2023 and again on May 8, 2023. On June 16, 2023, Welch sent the Lopezes a letter demanding payment. At trial, Welch testified that Felix Lopez began obstructing him from entering the Subject Property. On June 26, 2023, Welch sued the Lopezes for breach of promissory note, breach of contract, and money had and received. Welch also sought reasonable and necessary attorney's fees pursuant to section 38.001(8) of the Texas Civil Practice and Remedies Code.

Also on June 26, 2023, Welch filed an application for a temporary restraining order and temporary injunction, complaining that the Lopezes had prevented him from accessing the Subject Property for the purpose of removing farm tractors and implements, tools, and miscellaneous

construction equipment belonging to him as authorized by the agreement. On June 25, 2023, the trial court granted a temporary restraining order. On August 14, 2023, the Lopezes answered and alleged affirmative defenses and a counterclaim for breach of contract. They also sought attorney's fees pursuant to section 38.001. On July 14, 2023, the Lopezes attempted to give a cashier's check in the amount of $22,000.00 to Welch, which Welch refused.

On August 28, 2023, the trial court granted a temporary injunction, ordering that Welch be allowed unimpeded access to the Subject Property to engage in purposes authorized under the agreement. The trial court also ordered Welch to "refrain from impeding or interfering [with the Lopezes'] guests and invitees access to the Subject Property." On September 20, 2023, Welch filed a motion for contempt, alleging that Felix Lopez violated the temporary injunction on September 9, 2023 by contacting the sheriff's office while Welch was on the Subject Property. On September 25, 2023, the Lopezes supplemented their pleadings to add a counterclaim for trespass to chattel, alleging that in September 2023, Welch had "deliberately turned off the water to [the Lopezes'] irrigation system that was used to maintain 137 Crepe Myrtle trees" and had damaged the trees as a result. On October 3, 2023, the Lopezes filed their own motion for contempt, alleging that Welch had violated the trial court's order by "deliberately turn[ing] off the water to the Lopez[es'] irrigation system that was used to maintain" their Crepe Myrtle trees.

On January 24, 2024, the trial court called the cause "for trial and for a concurrently noticed hearing on [Welch]'s Motion for Contempt." The trial court denied Welch's motion for contempt. In its final judgment, the trial court ordered that "[a]s a condition to reinstatement of the subject promissory note, [the Lopezes] shall pay to [Welch], on or before April 12, 2024, the sum of $22,221.92." "Upon timely payment to [Welch], the subject promissory note shall be reinstated

and shall continue in force thereafter according to its terms." The trial court denied each party's request for attorney's fees and taxed costs of court against the party incurring same.

The trial court then made findings of fact and conclusions of law. It found that the parties had entered into a written contract in November 2021 and amended that contract on December 9, 2021. It found that under the contract, the Lopezes agreed to pay a total of $200,000.00 in installments, with $20,000.00 as a down payment and payments of $20,000.00 due on May 1, 2022, May 1, 2023, May 1, 2024, and May 1, 2025. A balloon payment of $100,000.00 was due on May 1, 2026. The trial court found that the Lopezes paid $20,000.00 in 2021 and 2022, which amounted "to a $40,000.00 investment" into the Subject Property. The trial court explained that section 7 of the contract states, "Furthermore, if the Grantee is 91 days late, [f]oreclosure procedures will begin and all expenses incurred will be Grantee's expense . . . ." The trial court found that the Lopezes did not make a timely payment on May 1, 2023, and that on June 26, 2023, Welch filed a lawsuit seeking, among other remedies, "judicial foreclosure of the vendor's lien and that said remedy be carried out by the sheriff's sale of the Subject Property to satisfy all amounts owed on the judgment." The trial court further found that the Lopezes submitted a late payment through their counsel on July 14, 2023, which was within the agreement's 90-day period. According to the trial court, the Lopezes were "under the belief that they could cure late payments within the 90-day period." The trial court found that Welch "unjustifiably refused" the Lopezes' late payment and that Welch breached the contract by initiating foreclosure proceedings within 90 days. The trial court found that Welch's conduct was "unfair and inequitable" to the Lopezes and that Welch "suffered no damages" due to the late payment.

In its conclusions of law, the trial court determined that the parties had entered into a valid contract and that while the Lopezes had made an untimely payment, because they did so within

the 90-day period, they had not breached the contract. The trial court concluded Welch had breached the agreement by prematurely filing suit to foreclose on the property when the Lopezes "had made reasonable efforts to submit payment to" Welch. The trial court further found that equitable relief was appropriate to prevent acceleration of the promissory note because of "the confusing language in Section 7," the Lopezes' "substantial investment" in the Subject Property, and the Lopezes' "attempt to make payment to [Welch]'s counsel in full." The trial court concluded that the Lopezes' untimely payment was excused by Welch's acceleration and wrongful foreclosure action. The trial court further concluded that Welch was not entitled to recovery and attorney's fees because Welch was not the prevailing party and did not recover damages. According to the trial court, Welch was not awarded anything "either monetary or equitable"; "rather[,] the note was reinstated, and [the] status quo [was] preserved."

## ATTORNEY'S FEES: PREVAILING PARTY

On appeal, Welch argues the trial court erred in failing to award him attorney's fees. Section 38.001 applies to a claim for "an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). To recover attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code, a claimant must (1) "plead and prevail on a claim for which attorney's fees are permitted under section 38.001," (2) "be represented by an attorney," (3) "present the claim to the opposing party or his agent," (4) "demonstrate that the opposing party did not tender payment within thirty days after the claim was presented," and (5) incur reasonable attorney fees. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383 (Tex. 2011); *see Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) ("To recover attorney's fees under section 38.001, a party must prevail on the underlying claim and recover damages."); *Dandachli v. Active Motorwerks, Inc.*, No. 03-19-00494-CV, 2021 WL 3118437, at *3 (Tex. App.—Austin July 23,

2021, no pet.) ("In addition, the party seeking the award [of attorney's fees] must provide evidence of the fees arising from the contract claim.").

Here, the trial court determined that the Lopezes' failure to make the payment timely was excused by Welch's improper acceleration and wrongful foreclosure action. The trial court concluded that Welch was "not the prevailing party." "Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *Ventling*, 466 S.W.3d at 154 (quoting *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009)). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id*. (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Under section 38.001, once a party has shown their entitlement to attorney's fees, a trial court has no discretion to deny them. *See id*.; *see also Dandachli*, 2021 WL 3118437, at \*3 ("If a party prevails on his contract claim, recovers damages or other meaningful relief, and provides sufficient evidence of the associated fees, an award of fees is mandatory.").

### A.     *Preliminary Injunction*

Welch first argues that the trial court erred in not determining he was a prevailing party because he secured a temporary injunction and enforced "his contractual right to access the property, and in doing so he recovered over $140,000.00 worth of" his equipment that was still on the Subject Property. According to Welch, "[t]hat this issue had been resolved (through the injunction) by the time of trial in no way diminishes the real cost [he] incurred in having to forcefully cure the Lopezes' contractual breaches." In support of his argument that obtaining a temporary injunction before trial entitles him to "prevailing party" status under chapter 38, he cites to *Veasay v. Abbott*, 13 F.4th 362 (5th Cir. 2021), a Fifth Circuit opinion relating to whether a

- 6 -

party is a prevailing party under federal statutes and is thus inapplicable to whether Welch is entitled to attorney's fees pursuant to chapter 38. Welch further cites cases for the proposition that even though he had obtained his equipment before trial, his claim for attorney's fees under chapter 38 was not moot. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005); *Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 774-75 (Tex. App.—Dallas 2011, no pet.). However, we conclude that the dispositive issue is not whether Welch's claim for attorney's fees under chapter 38 was moot because he had already obtained his equipment before trial. Instead, the dispositive issue is whether he was a prevailing party on the basis of merely obtaining a temporary injunction.

As noted, under Texas Supreme Court precedent, a party "'prevails' when actual relief *on the merits of his claim* materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Ventling*, 466 S.W.3d at 154 (quoting *Farrar*, 506 U.S. at 111) (emphasis added). A temporary injunction, however, is a preliminary matter, and the trial court's ruling on a temporary injunction does not support the defense of res judicata. *See Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 437 n. 21 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also Epps v. Fowler*, 351 S.W.3d 862, 868-69 (Tex. 2011) (holding that "a defendant is a prevailing party when a plaintiff nonsuits a case with prejudice" because the res judicata effect of a nonsuit with prejudice "works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit"). "To receive a temporary injunction, a party need not prove it will prevail on the merits; it must only show 'a probable right to recovery.'" *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 638 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). "The expression 'probable right to recover' is a term of art; it does

not imply any kind of determination that becomes the law of the case." *Id*. (quoting *183/620 Grp. Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.)). Thus, a temporary injunction is distinct from a permanent injunction; a party being granted injunctive relief in the form a permanent injunction could form the basis for an award of attorney's fees as a prevailing party. *See Norton v. Deer Creek Prop. Owners Ass'n*, No. 03-09-00422-CV, 2010 WL 2867375, at \*4-\*9 (Tex. App.—Austin July 22, 2010, no pet.). We hold that Welch obtaining a preliminary injunction in this case cannot form the basis of an award of attorney's fees under chapter 38.

### B. Award of $22,221.92

Welch next argues that he is a prevailing party because the judgment ordered the Lopezes to pay him $22,221.92. According to Welch, in doing so, the judgment "modif[ied] the [Lopezes'] behavior in a way that directly benefits [him]." *Intercontinental Grp. P'ship*, 295 S.W.3d at 654. However, it is clear from the trial court's findings of fact that the award of $22,221.92 merely relates to the late payment the Lopezes attempted to make to Welch within 90 days of the payment deadline. Indeed, the final judgment states that upon payment of $22,221.92 by the Lopezes, the promissory note is "reinstated and shall continue in force thereafter according to its terms." In its findings of fact, the trial court found that Welch improperly rejected this attempted payment and improperly brought a foreclosure action before the end of the 91-day period as set out in the agreement. We agree with the Lopezes that in ordering the payment of $22,221.92, the trial court merely put the parties back to the same status they had before Welch filed suit. Thus, we conclude the award of $22,221.92 does not materially alter the legal relationship between the parties. *See id*. at 652 (emphasizing that to be a prevailing party, a party must "obtain actual and meaningful relief, something that materially alters the parties' legal relationship").

C.     *Findings of Fact Supporting Trial Court's Conclusion That Welch Is Not a Prevailing Party*

1.    *Interpretation of Contract*

Welch next contends that the "trial court's findings of fact do not support its prevailing-party conclusion." Welch first attacks the trial court's finding that he "breached a condition of the contract by initiating foreclosure proceedings within 90 days" by contending that the trial court erroneously interpreted the contract as a matter of law. In construing a written contract, we "ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id*. "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id*. "The construction of an unambiguous contract is a question of law for the court," which we review de novo. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "A contract is unambiguous if it can be given a definite or certain legal meaning." *J.M. Davidson*, 128 S.W.3d at 229. "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *Id*.

The agreement provided for a price of $200,000.00, subject to the following payment schedule:

PAYMENT SCHEDULE:

1) Grantee agrees to pay to the Grantor a 10% ($20,000.00) "Down Payment" upon execution of this agreement.

2) Grantee agrees to pay the sum of $20,000.00 on May 1, 2022, $20,000.00 on May 1, 2023, $20,000.00 on May 1, 2024, $20,000.00 on May 1, 2025, and a "Balloon Payment" of $100,000.00 on May 1, 2026.

3) A late fee of 10% will be assessed if payment is 10 days late.

4) No interest will be charged if payment schedule is adhered to. A 5% interest fee will be charged if payment schedule is not adhered to, attached to the current payment due.

In a section titled "Specifications," the parties agreed to the following:

1) Grantee will be responsible for payment of Property, County, School, etc. taxes when due annually beginning January 31, 2023 ([s]tarting for Calendar Year 2022). Grantor will pay taxes for the year 2021.

2) Grantor will pay the CPS electric bill and Green Valley SUD water bill, not to exceed the period specified below.

3) Grantor agrees to maintain adequate Bovine on the property to satisfy the Bexar County/Texas Agriculture Tax requirements for the specified period below. If requirements are breached by Grantee, the additional taxes will be the responsibility of the Grantee.

4) Grantee has written permission to build, develop, or otherwise encumber the property upon execution of this agreement. Grantee may sell the property when agreement is completed or with permission of Grantor. If the improvements are cause for tax increase, the Grantee is responsible.

5) Grantor shall not allow any companies, entities, other than Law Enforcement or Fire/Rescue personnel, to enter the property without permission of the Grantee.

6) Grantor will convey all mineral rights owned by Grantor to Grantee.

7) Grantor shall tender a "Warranty Deed" upon completion of this agreement.

The agreement then provided for the 91-day period at issue in this appeal:

Furthermore, if the Grantee is 91 days late, [f]oreclosure procedures will begin and all expenses incurred will be at the Grantee's expense. All monies and improvements attached to the property will revert to Grantor.

The agreement continued with the following:

8) Grantee will allow Grantor continued access, not to exceed the designed time period of two (2) years from execution of this agreement. This time will be utilized for removing Farm Tractors and Implements, tools and misc construction equipment and trailers. Grantor will also clean out shop and property.

At the end of the agreement, the contract had the following "merger clause":

This Agreement contains the entire agreement and understanding on this subject matter and supersedes all other prior and contemporaneous agreements.

In the event any one (1) or more of the provisions of this agreement shall be of [sic] or become invalid, illegal, or unenforceable in any aspect, the validity, legality, and enforceability of the remaining provisions of this Agreement shall not be affected.

In interpreting the provision, "if the Grantee is 91 days late, [f]oreclosure procedures will begin and all expenses incurred will be at the Grantee's expense," the trial court determined that Welch had improperly brought a foreclosure action by filing it before the Lopezes' payment was 91 days late. The trial court also found that Welch had improperly rejected the Lopezes' attempted late payment tendered before the 91st day.

Welch argues on appeal that the 91-day provision "is written as a self-executing event, not as a prohibition." We disagree with this interpretation by Welch because foreclosure proceedings cannot be self-executing. A party must necessarily initiate foreclosure proceedings. In considering the plain language of the contract, we agree with the trial court's interpretation that the agreement provided the Grantor could not properly initiate foreclosure proceedings until the Grantee was 91 days late with a payment.[1]

---

[1]We note that Welch complains about the trial court's finding that the Lopezes were "under the belief that [they] could cure late payments within the 90-day period according to the Contract language," emphasizing that under the parol evidence rule, the Lopezes' *belief* is not material or relevant. Welch also points out that the contract has a merger clause stating, "This Agreement contains the entire agreement and understanding on this subject matter and supersedes all other prior or contemporaneous agreements." We agree that the Lopezes' *belief* is irrelevant in this case. *See First Bank v. Brumitt*, 519 S.W.3d 95, 109, 110 (Tex. 2017) (explaining that "the construction of an unambiguous contract, including the determination of whether it is unambiguous, depends on the language of the contract itself, construed in light of the surrounding circumstances" and that "[e]xtrinsic evidence cannot be used to show that the parties probably

### 2. Tender of Late Payment

Welch next argues that the evidence is legally and factually insufficient to support the trial court's findings that Welch "unjustifiably refused payment" and that Welch's conduct was "unfair and inequitable" to the Lopezes. Welch argues that when he "refused payment at the [temporary] injunction hearing on July 21, 2023, the Lopezes were still in breach because they were continuing to impede Welch's access to the property, they had failed to provide proof of insurance, and they failed to tender all interest due." According to Welch, he therefore "properly refused payment." In response, the Lopezes argue that there is legally and factually sufficient evidence that they were not in material breach of the contract when Welch refused the tender of their late payment.

We review a trial court's findings of fact after a bench trial under the same standards applied to jury verdicts. *Bekins Van Lines, Inc. v. Kahn*, 717 S.W.3d 86, 94 (Tex. App.—Austin 2025, pet. denied); *Donias v. Old Am. Cnty. Mut. Fire Ins. Co.*, 649 S.W.3d 789, 793 (Tex. App.—El Paso 2022, no pet.). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Bekins Van Lines*, 717 S.W.3d at 94; *Donias*, 649 S.W.3d at 793. The trial court is free to draw its own deductions from all the evidence and is not bound by the testimony of any witness. *Bekins Van Lines*, 717 S.W.3d at 94. Thus, "[w]e defer to the trial court's findings of fact—so long as they are supported by the record—and review conclusions of law de novo." *Id.* (quotation omitted).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Kazmi v.*

---

meant, or could have meant, something other than what their agreement stated") (citation omitted). We have construed the unambiguous language of the agreement in this appeal as a matter of law and have not based any part of our holding on the Lopezes' belief. *See id.* at 110.

*Kazmi*, 693 S.W.3d 556, 566 (Tex. App.—Austin 2023, pet. denied); *Benavides v. Alexander*, 646 S.W.3d 14, 23 (Tex. App.—San Antonio 2021, pet. denied). When an appellant challenges the factual sufficiency of an adverse finding on an issue the appellant did not have the burden of proof at trial, he brings an "insufficient evidence" challenge and must demonstrate that the "evidence adduced to support the vital fact, even if it is the *only* evidence adduced on an issue, is factually too weak alone to support it." *Ritchey v. Crawford*, 734 S.W.2d 85, 87 n.1 (Tex. App.—Houston [1st Dist.] 1987, no writ) (emphasis in original). In reviewing this "insufficient evidence" challenge, we consider, weigh, and examine all the evidence that supports the finding and then consider all the evidence that is contrary to the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied).

"A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied)). "A material breach by one party to a contract can excuse the other party from any obligation to perform." *Id.*; *see Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). "The materiality of a breach—the question of whether a party's breach of a contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact." *Henry*, 333 S.W.3d at 835.

The payment at issue was due on May 1, 2023. The 91st day after May 1, 2023 was August 21, 2023. At trial, Felix Lopez testified that he attempted to cure his late payment through a cashier's check of $20,000.00. Felix Lopez testified that Welch rejected it because he wanted the ten percent late fee. Felix Lopez calculated ten percent and on July 14, 2023, submitted a cashier's check for $22,000.00, but Welch rejected that payment too. Felix Lopez testified that Welch "wanted the interest rates." This cashier's check was entered into evidence and was dated July 14, 2023. Felix Lopez testified that "[t]he interest on there after calculating it on that date came up to $208.00." Felix Lopez testified, "I went ahead and made it for $300 for interest, just in case they wanted a little bit more. So, I sent out a check for $22,300.00." Felix Lopez testified that on July 14, 2023, he gave the cashier's check to Welch's attorney at his law office because Felix Lopez "wasn't in communication with Mr. Welch." When asked if he was informed of the proper amount to pay by Welch, Felix Lopez testified,

> We weren't given a specific amount, it was just rejected. And so, we had to kind of go through the contract and figure out why it's being rejected because all we knew it was not the right amount. So I think it was 20,000 and 22,000. And then we looked at it where it said interest accruded [sic]. So I factored that time and interest and it was like $208. I made it for $300 just in case. I just didn't want anymore friction.

Felix Lopez testified that he made three different attempts to make the proper late payment.

Admitted in evidence was an email from the Lopezes' attorney dated July 14, 2023, to Welch's attorney; the email stated that the Lopezes' attorney was attempting to tender payment in the form of a cashier's check to Welch so that they could resolve the lawsuit. Also admitted in evidence was a FedEx envelope, which was marked August 10, 2023 "Priority Overnight." Thus, the evidence shows the Lopezes made multiple attempts at tendering their payment before the 91st day of August 21, 2023. Welch points out that his demand letter stated that in addition to $22,000.00, the Lopezes owed $2.77 per day in accrued interest beginning on May 2, 2023 until

paid in full. Thus, pursuant to Welch's demand letter, the Lopezes' tender on August 11, 2023 should have been for $22,000.00 plus $193.90 in accrued interest, totaling $22,193.90. Felix Lopez testified that he attempted to give Welch a payment of $22,300.00. We hold that the evidence is legally and factually sufficient to support the trial court's finding that Welch "unjustifiably refused payment." The evidence is also legally and factually sufficient to show that Welch's conduct was "unfair and inequitable" to the Lopezes, as the above evidence supports the trial court determining that the Lopezes were attempting to submit their late payment within the terms of the contractual language and Welch was not being reasonable in his refusal of the late payment.

Welch next argues that he properly "refused payment at the [temporary] injunction hearing on July 21, 2023," because the Lopezes had first breached the contract by impeding access to the property and by failing to insure the property. First, Felix Lopez testified at trial that he called his homeowner's insurance company and was informed that his umbrella policy covers the Subject Property. According to Felix Lopez, "it states that the insurance from our house moves to any other properties that we have due to our umbrella policy." Felix Lopez testified that when he and his wife signed the contract in this case, he and his wife "contacted [their] homeowner's insurance to go ahead and get insurance on the land." Felix Lopez testified that his homeowner's insurance informed him that the land was "already insured because [his and his wife's] policy states that it extends to all properties that [they] own." Felix Lopez testified that the amount of coverage was $300,000 in liability. On appeal, Welch complains that the Lopezes' home insurance policy admitted in evidence does not explicitly cover the Subject Property. However, it also does not contradict Lopez's testimony that his umbrella policy covered the Subject Property.

Second, with regard to Welch's argument that the Lopezes were in material breach before him because they interfered with his rights to access the Subject Property, Welch fails to mention

the evidence at trial showing that he was also interfering with an irrigation system watering the Lopezes' 137 Crepe Myrtle trees. Felix Lopez testified that his and his wife's irrigation system to the trees was disconnected while they were on vacation. Felix Lopez testified that he reconnected it, and the next day, the irrigation system was unscrewed and disconnected. Felix Lopez reconnected the irrigation system again, and the next day, "it was thrown even further" and one of the "irrigation timers was broken." Felix Lopez purchased a new timer, connected it again, and then the PVC pipe was cut, the "irrigation had been thrown, and there was primer and glue with a PVC cap where . . . our irrigation timer, where it was connected, and it was just a threading." Felix Lopez testified that Welch's destruction of his and his wife's irrigation system is what caused his and his wife's Crepe Myrtle trees to die. In contrast, Welch testified at trial that he had found a water leak and fixed it while the Lopezes had been on vacation. We note that as the fact finder, the trial court could have determined that Felix Lopez was a credible witness and Welch was not. *See Bekins Van Lines*, 717 S.W.3d at 94; *Donias*, 649 S.W.3d at 793.

In addition to the irrigation system, Felix Lopez also testified that Welch had threatened one of Felix Lopez's employees when that employee was present on the Subject Property. Felix Lopez testified that Welch told the employee that "he [Welch] was going to shoot anybody or any employee that comes through that gate." Given all this evidence, the trial court, as factfinder, could have reasonably determined that the Lopezes' actions were not a material breach to the contract in question and were in reaction to Welch's actions. We hold the evidence is legally and factually sufficient to support the trial court's findings that Welch "unjustifiably refused payment" and that Welch's conduct was "unfair and inequitable" to the Lopezes.

**CONCLUSION**

For the reasons stated above, we hold the trial court did not err in failing to award attorney's fees to Welch under chapter 38 because Welch has failed to show on appeal that he was a prevailing party. We therefore affirm the judgment of the trial court.

Adrian A. Spears II, Justice