

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00047-CV

———————————————————

MATTHEW D. CHALLIS AND JEFFERIES, LLC, Appellants

V.

FIAMMA STATLER, LP; FIAMMA PARTNERS, LLC; AND FIAMMA
MANAGEMENT GROUP, LLC, Appellees

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-303752-18

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

In 2020, we affirmed the trial court's Rule 91a dismissal of the claims brought by Appellees Fiamma Statler, LP, Fiamma Partners, LLC, and Fiamma Management Group, LLC (collectively, Fiamma) against Appellants Matthew Challis and Jefferies, LLC (the Underwriters).[1] *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *1–20 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.); *see* Tex. Sup. Ct., *Final Approval of Rules for Dismissals and Expedited Actions*, Misc. Docket No. 13-9022 (Feb. 12, 2013) (adopting former Tex. R. Civ. P. 91a) [hereinafter Tex. R. Civ. P. 91a (2013)].[2] But we reversed and remanded the trial court's award of Rule 91a attorney's fees, holding that the amount of that award—which was just "5% of the Underwriters' proven attorney's fees"—was contrary to the great weight and preponderance of the evidence. *Fiamma Statler*, 2020 WL 6334470, at *18. Now the case comes back to us with the same issue.

The Underwriters allege that the amount of attorney's fees awarded by the trial court on remand is against the great weight and preponderance of the evidence—again. We agree, reverse, and remand for a redetermination—again.

---

[1]For consistency, we identify the parties by the same terms used in our prior opinion. *See Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *1–20 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.).

[2]After Fiamma filed suit, Rule 91a was amended for "civil actions commenced on or after September 1, 2019." Tex. R. Civ. P. 91a cmt.; *see Fiamma Statler*, 2020 WL 6334470, at *5 n.6.

## I.  Standard of Review

Generally, we review an award of attorney's fees for an abuse of discretion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990); *Asta Partners, LLC v. Palaniswamy*, No. 02-20-00371-CV, 2021 WL 5133888, at *8 (Tex. App.—Fort Worth Nov. 4, 2021, no pet.) (mem. op.).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its ruling is not supported by legally or factually sufficient evidence.  *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding); *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *Mignogna v. Funimation Prods., LLC*, No. 02-19-00394-CV, 2022 WL 3486234, at *16 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op.); *Asta Partners*, 2021 WL 5133888, at *8.

## II.  Guiding Rules and Principles

The first rule or principle that guides this case is Texas Rule of Civil Procedure 91a.  That Rule provides that "the [trial] court must award the prevailing party . . . all . . . reasonable and necessary attorney fees [*sic*] incurred with respect to the challenged cause of action."[3]  Tex. R. Civ. P. 91a.7 (2013).  It is undisputed that the Underwriters are the "prevailing party" and that they successfully challenged all of Fiamma's causes of action.  *See Fiamma Statler*, 2020 WL 6334470, at *18 (recognizing that "[t]he Underwriters successfully moved to dismiss each claim brought against

---

[3]The current version of Rule 91a.7 uses "may" rather than "must."  Tex. R. Civ. P. 91a.7.

them; thus, their attorney's fees necessarily were incurred with respect to the challenged causes of action"). The sticking point is the amount of attorney's fees that the evidence showed to be "reasonable and necessary." *See* Tex. R. Civ. P. 91a.7 (2013).

"[T]he lodestar method . . . applies for determining the reasonableness and necessity of attorney's fees in a fee-shifting situation" and is thus another rule or principle guiding this case. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019). The lodestar method is generally a two-step process: (1) determining the base lodestar, i.e., the presumptively reasonable amount of fees; then (2) adjusting the base lodestar if necessary. *Id.* at 501–02 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)); *Asta Partners*, 2021 WL 5133888, at *8.

The base lodestar is the product of the reasonable number of hours that counsel spent on the case multiplied by the reasonable hourly rate for such work.[4] *Rohrmoos Venture*, 578 S.W.3d at 497–98, 501 (quoting *El Apple*, 370 S.W.3d at 760); *Asta Partners*, 2021 WL 5133888, at *8. This calculation incorporates a host of considerations, including many of the so-called *Arthur Anderson* factors: "the time and labor required"; "the novelty and difficulty of the questions involved"; "the skill required to perform the legal service properly"; "the fee customarily charged in the locality for similar legal services"; "the amount involved" in the case; "the experience,

---

[4]Neither party requested any adjustments to the base lodestar and the trial court's findings and conclusions do not reference any.

reputation, and ability of the lawyer or lawyers performing the services"; "whether the fee is fixed or contingent on results obtained"; the "uncertainty of collection before the legal services have been rendered"; and the "results obtained." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see* Tex. Disciplinary Rules Prf'l Conduct R. 1.04(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, art. X, § 9 (listing factors); *see also Rohrmoos Venture*, 578 S.W.3d at 496, 500 (explaining that "[t]he lodestar method . . . yield[s] a base figure that reflects most *Arthur Andersen* factors").

In the second step of the lodestar method, the factfinder can adjust the base lodestar up or down "when considerations not already accounted for in the first step establish that the base lodestar figure represents an unreasonably low fee award [that] depriv[es] fair compensation to the prevailing party's attorney" or when the base lodestar is established "to be an unreasonably high or excessive fee award [that] creat[es] a windfall for the prevailing party or its attorney." *Rohrmoos Venture*, 578 S.W.3d at 502.

"Both reasonableness and necessity are fact questions that are, of course, determined based on the proffered evidence." *Fiamma Statler*, 2020 WL 6334470, at *18. Generally, to support calculation of the base lodestar, a party seeking attorney's fees must offer evidence of, at a minimum, (1) the particular services performed, (2) who performed those services, (3) when they were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate

5

for each person performing such services. *Rohrmoos Venture*, 578 S.W.3d at 502; *Asta Partners*, 2021 WL 5133888, at *8–9. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Rohrmoos*, 578 S.W.3d at 499; *see Asta Partners*, 2021 WL 5133888, at *8.

## III.  Evidence of Attorney's Fees

When this case came before us in the prior appeal, the record contained evidence that the Underwriters had incurred approximately $668,447 in trial court attorney's fees. *See Fiamma Statler*, 2020 WL 6334470, at *5, 16. Our prior opinion discussed much of this evidence, including the Underwriters' attorneys' detailed billing records; the curricula vitae (CV) for the three primary trial attorneys who had worked on the Underwriters' case; an affidavit from another defendant's counsel regarding the rates he had charged his client (for comparison); and an affidavit from the Underwriters' lead trial counsel regarding the work performed and the rates charged. *See id.* at *5–7, 16–18. The Underwriters' lead trial counsel averred to the "high-value" nature of the case; the threat to the Underwriters' business reputations; the precise number of hours worked on the case (at the time, 1,052 hours); the hourly rates charged by the members of the legal team, which ranged from $408 to $850; and the reasonableness of the rates charged in comparison to the "prevailing rates" charged by other Texas lawyers of comparable experience in similar commercial cases. *See Fiamma Statler*, 2020 WL 6334470, at *5–6, 16–17; *cf.* Tex. Disciplinary Rules Prf'l

Conduct R. 1.04(b) (directing factfinder to consider, among other factors, "the time and labor required[;] . . . the skill requisite to perform the legal service properly[;] . . . the fee customarily charged in the locality for similar legal services[; and] . . . the amount involved"); *Arthur Andersen*, 945 S.W.2d at 818 (similar). To emphasize "the amount involved" in the case, the Underwriters filed an excerpt from a hearing transcript in which Fiamma's counsel described the case as "one of the biggest frauds and heists in construction . . . that has ever existed." Tex. Disciplinary Rules Prf'l Conduct R. 1.04(b) (directing factfinder to consider, among other factors, "the amount involved"); *Arthur Andersen*, 945 S.W.2d at 818 (same). In other words, the Underwriters "used the lodestar method, addressed the *Arthur Andersen* factors, and presented detailed evidence of their attorney's fees." *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *18–19 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (mem. op. on en banc reconsideration) (reversing trial court's award of attorney's fees).

Fiamma's only controverting evidence was an affidavit from its trial counsel, who opined that, among other things, "having multiple attorneys work on a simple Rule 91a dismissal motion is not reasonable"[5] and "$850 per hour is excessive and

---

[5]Fiamma's counsel stated that a Rule 91a motion does not require "an experienced litigator" or significant "legal acumen" because it merely involves "assert[ing] that there [i]s no basis in law or in fact for a particular ple[a]d[ed] cause of action." But the Underwriters' Rule 91a motion did not merely recite a conclusory assertion that there was no basis for Fiamma's claims; the 25-page motion cited and discussed legal authority to, among other issues, challenge whether several of

7

unreasonable in Tarrant County for civil litigation such as this."[6] *See Fiamma Statler*, 2020 WL 6334470, at \*6 (discussing Fiamma's affidavit).

Based on this body of evidence—the Underwriters' detailed invoices, CVs, affidavits, and transcript, countered by Fiamma's affidavit—we reversed the trial court's $36,750 fee award and held that the "award of approximately 5% of the Underwriters' proven [trial] attorney's fees" was contrary to the great weight and preponderance of the evidence. *Id.* at \*18. Plus, it was not clear if the $36,750 award included appellate attorney's fees, and although the Underwriters had not offered evidence of the appellate fees they anticipated, they were entitled to recover reasonable and necessary appellate attorney's fees under Rule 91a. *Id.* at \*19; *see* Tex. R. Civ. P. 91a.7 (2013); *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); *Asta Partners*, 2021 WL 5133888, at \*13. Accordingly, we issued a mandate "revers[ing] the

---

Fiamma's causes of action existed under Texas law. Although Fiamma's affidavit implied that the Underwriters could have achieved the same result—dismissal—with a bare-bones, conclusory Rule 91a motion, the Underwriters made the strategic decision to dedicate more effort to the Rule 91a motion, and that decision paid off. *Cf. Iola Barker v. Hurst*, 632 S.W.3d 175, 192–94 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (rejecting non-prevailing party's fee affidavit as conclusory when affidavit minimized the complexity of the tasks the prevailing party's counsel had performed and described such tasks as "largely unnecessary").

[6]Fiamma's counsel referenced his own hourly billing rate—$350—as the basis for his opinion that the $850 billing rate was excessive, but "an opposing party's litigation expenditures are not *ipso facto* reasonable or necessary" and generally, "comparisons between the hourly rates and fee expenditures of opposing parties are inapt." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 808–10 (Tex. 2017) (orig. proceeding).

award for attorney's fees . . . and remand[ing] that issue for the trial court to redetermine the Underwriters' reasonable and necessary trial attorney's fees" while also remanding "for the trial court to redetermine and enter an express award for appellate attorney's fees." *See Fiamma Statler*, 2020 WL 6334470, at \*20.

On remand, the Underwriters filed a renewed motion seeking $653,932.82 in trial attorney's fees[7] plus $543,569.25 in appellate fees—a total of almost $1.2 million. To support this motion, the Underwriters supplemented the evidence of their trial attorney's fees[8] and provided similarly detailed records of their appellate attorney's fees. They offered invoices from their appellate counsel with line items for each task performed. The line items described what the task was, who performed it, when it was performed, and how long it took.

The Underwriters also provided CVs summarizing their appellate attorneys' credentials and experience. *See* Tex. Disciplinary Rules Prf'l Conduct R. 1.04(b) (directing factfinder to consider "the experience, reputation, and ability of the lawyer

[7]The discrepancy between the amount of trial attorney's fees sought originally—$668,447—and the amount of trial attorney's fees sought after remand—$653,932.82—was not explained.

[8]The Underwriters' lead trial counsel filed a "[s]upplemental and [a]mended" affidavit. She explained that she had switched law firms, she updated the total number of hours worked by her firms at the trial and appellate levels (1,181.82), she identified members of the legal team who had begun working on the Underwriters' case since she had filed her original affidavit, and she notified the court of her new hourly billing rate. For each new member of the core trial team, a CV was provided or linked.

9

or lawyers performing the services," among other factors); *Arthur Andersen*, 945 S.W.2d at 818 (same). And they provided an affidavit from one of their appellate attorneys averring to detailed facts that directly addressed many of the *Arthur Anderson* considerations. *See Arthur Andersen*, 945 S.W.2d at 818. For example, the Underwriters' appellate counsel identified the precise number of hours worked by each member of his appellate team and by the firm as a whole (844.6 hours); he listed the hourly rates charged by each member of his appellate team; he confirmed the reasonableness of the hourly rates in comparison to "the market rates . . . in such large and complex disputes"; he detailed the nature and complexity of the "novel" and "difficult issues" on appeal; he explained the breadth of the tasks performed on appeal; he reminded the trial court of the voluminous nature of the appellate record; he quoted Fiamma's statement to show the amount of money involved and the high-stakes threat posed to the Underwriters' reputations; and he noted the "favorable results" obtained on appeal. *Cf.* Tex. Disciplinary Rules Prf'l Conduct R. 1.04(b) (directing factfinder to consider, among other factors, "the time and labor required, the novelty and difficulty of the questions involved, . . . the skill requisite to perform the legal service properly[,] . . . the fee customarily charged in the locality for similar legal services[,] . . . the amount involved and the results obtained[,] . . . [and] the experience, reputation, and ability of the lawyer"); *Arthur Andersen*, 945 S.W.2d at 818 (similar).

Fiamma produced no controverting evidence on remand; it responded solely with argument. Specifically, Fiamma questioned how "so many lawyers [for the Underwriters] spent so much time on one Rule 91a Motion to Dismiss." It argued that the Underwriters' counsel performed just five tasks related to the Rule 91a motion—they "filed one motion in the trial court[,] . . . argue[d] one hearing in support of their motion[,] . . . responded to one appellate brief in the Court of Appeals, attended one appellate argument, and responded to one petition for review in the Texas Supreme Court"—and it claimed that the Underwriters' counsel was unreasonable for billing more than $1 million for just five tasks. Fiamma proposed limiting the fee award to $125,000—$75,000 for trial and $50,000 for appeal— although it did not explain how it calculated the proposed amount.

This was the state of the record on remand when the trial court entered the award for attorney's fees that sparked the present (second) appeal. Suffice it to say, the evidence supporting the Underwriters' incurred fees was even more lopsided than it had been when we reviewed the parties' initial appeal; the Underwriters' evidence had grown on remand, while Fiamma had offered no additional evidence.

### IV. The Trial Court's Fee Award and Abuse of Discretion

Despite the lopsided evidence, on remand, the trial court awarded just $74,109.87 in trial attorney's fees and $40,600 in appellate attorney's fees—

11

approximately 9.6% of the Underwriters' proven incurred fees.[9]  The trial court filed

findings of fact and conclusions of law to support its award, but the findings and

conclusions did not explain how the court arrived at the $114,709.87 figure.[10]

Our sister court reversed a similar, disproportionately small fee award in *Iola*

*Barker v. Hurst*.[11]  632 S.W.3d at 188–95.  There, the prevailing party offered billing

invoices, affidavits describing its attorneys' qualifications and experience, and other

supportive documentation to show that it had incurred more than $70,000 in

attorney's fees.  632 S.W.3d at 188–94 (noting $9,430.43 attributable to one prevailing

party, $10,832.50 attributable to another, and $50,071 in non-segregable fees

attributable to both).  The opposing party responded with two conclusory affidavits

from its attorneys "simply criticiz[ing] the fees sought."  *Id.* at 192–93.  Despite this

lopsided evidence, the trial court awarded only $16,000 in attorney's fees.  *Id.* at 191.

---

[9]Due to a typo in the trial court's order awarding attorney's fees, the trial court later issued an amended order with the same monetary amounts.

[10]The trial court's findings and conclusions stated that the court had reviewed "all unredacted billing records from September 30, 2017 through July 16, 2018 [i.e., the date of the order granting the Underwriters' motion to dismiss]," but the findings and conclusions did not reference the evidence submitted by the Underwriters on remand.  And while the trial court's order awarding fees noted its consideration of the renewed motion that the Underwriters had filed on remand, the fee order was subsequently amended to correct an unrelated typo, and the reference to the Underwriters' renewed motion was not included in the amended fee order.  It is unclear if these omissions were intentional.

[11]*Iola Barker* involved a dismissal under the Texas Citizens Participation Act. *See Iola Barker*, 632 S.W.3d at 181, 184.

The First District Court of Appeals reversed, holding that the trial court's award of "just 17% of [the prevailing party's] evidence of attorney's fees incurred" was an abuse of discretion because it "b[ore] no relationship to the uncontroverted evidence of attorney's fees incurred." *Id.* at 194–95.

The same is true in this case. "Although we understand that the Underwriters were not necessarily entitled to recover all of their requested but contradicted attorney's fees," *Fiamma Statler*, 2020 WL 6334470, at *18; *see Mignogna*, 2022 WL 3486234, at *17, many aspects of the Underwriters' incurred fees were not contradicted, and many others were challenged on grounds rejected by this court in the prior appeal.[12] *See, e.g.*, *Fiamma Statler*, 2020 WL 6334470, at *18 (holding that the Underwriters' recoverable attorney's fees "are not limited to those incurred only with regard to filing the motion to dismiss"); *cf. Ragsdale*, 801 S.W.2d at 882 ("[W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed."). On this record, the trial court's award

---

[12]In the remanded proceedings below, Fiamma urged the trial court to limit its fee award to five specific Rule 91a-related tasks. Indeed, on appeal, the Underwriters note that the sum of a "subset of billing entries that reference the renewed motion to dismiss" is $74,111.32—within $1.50 of the trial court's $74,109.87 award for trial attorney's fees.

In the prior appeal, we held that it was an abuse of discretion for the trial court to "[l]imit[] the Underwriters to only those fees directly traceable to the renewed motion to dismiss." *Fiamma Statler*, 2020 WL 6334470, at *18. Fiamma's argument on remand invited the trial court to repeat this error. To the extent that the trial court followed Fiamma's erroneous urgings, it abused its discretion—again. *See id.*

13

of less than 10% of the Underwriters' proven incurred fees was contrary to the great weight and preponderance of the evidence.

The disproportionate nature of the trial court's award points to another issue as well: the court's failure to apply the lodestar analysis. "The supreme court has stated that the factfinder's starting point for calculating an attorney's-fee award is to determine the reasonable hours worked multiplied by a reasonable hourly rate," *Mignogna*, 2022 WL 3486234, at *17, but the trial court's findings do not identify the reasonable number of hours worked and do not identify a reasonable hourly rate. In fact, the only hourly rates recited in the trial court's findings are the billing rates charged by the Underwriters' legal team, and given the size of the fee award, it seems safe to say that the trial court did not adopt the Underwriters' billing rates.

While the trial court's findings convey skepticism about the reasonableness and necessity of certain Underwriter charges—noting, for example, that "[m]any of the support staff who are not licensed attorneys billed in excess of $200 per hour" and that "multiple attorneys consistently billed for conferring on the same tasks"—it is unclear if or how this skepticism factored into the fee award. The court did not identify a different hourly rate that it considered reasonable for support staff, nor did it find that it was unnecessary for multiple attorneys to work together on the specific tasks billed. *See Ragsdale*, 801 S.W.2d at 882 (noting that "attendant circumstances" may create a fact question regarding reasonableness of otherwise-uncontradicted evidence of attorney's fees). And although the trial court's findings recite that the

14

court "utilized the Lodestar method" and considered the relevant factors, we "cannot automatically conclude that such cursory mention is tantamount to compliance"—particularly when, as here, the trial court's award runs contrary to the *Arthur Anderson* evidence. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 373 (Tex. 2014); *see Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 226 & n.4 (Tex. 2014) (noting that, although findings and conclusions were filed, they "shed no light on the court's reasoning"). In short, we have no idea how the trial court came to its award figure, but it does not appear to have been through application of the lodestar method to the evidence proffered by the parties.[13]

In that sense, the case is reminiscent of *Mogged v. Lindamood.* 2020 WL 7074390, at *1–20 (affirming dismissal under Texas Citizens Participation Act). There, the parties requesting attorney's fees "used the lodestar method, addressed the *Arthur Andersen* factors, and presented detailed evidence of their attorney's fees," and the opposing party challenged the reasonableness of the fees "as well as arguing that the [prevailing parties] should not recover attorney's fees devoted to [certain motions]." *Id.* at *18–19. Of the $169,456 requested and billed by the prevailing party's primary counsel, the trial court awarded only $30,296—less than 18%.[14] *See id.*

---

[13]Fiamma's arguments are of little help in solving this puzzle; it has not filed a brief in this court.

[14]The trial court's award included "court costs, reasonable attorneys' fees, and other expenses," even though the prevailing party had requested an additional $1,106 for costs and $6,658 for expenses. *Mogged*, 2020 WL 7074390, at *7–8 & n.12.

at *7–8. The reason for the reduced award was unclear; "[b]eyond characterizing its award as encompassing 'reasonable attorneys' fees,' the trial court's order did not indicate why it [had] reduced the requested fee award, nor did it make any written findings of fact and conclusions of law." *Id.* at *18. We reversed, holding that the amount of the trial court's award was against the great weight and preponderance of the evidence. *Id.* at *18–19.

Similarly, in *Asta Partners, LLC v. Palaniswamy*, we reversed an award of attorney's fees because the trial court's findings and conclusions did not reflect an application of the lodestar method. 2021 WL 5133888, at *12. The prevailing party had a contingency agreement with its attorneys for 40% of the verdict, but to recover for its fees under the lodestar method, it introduced detailed evidence that its counsel had worked 588.4 hours on the case and that his hourly rate was $575. *Id.* at *9–11. The non-prevailing party's counsel testified in rebuttal, questioning the necessity of the prevailing counsel's work, describing a rate of $575 as excessive, and suggesting that a reasonable fee would be "somewhere between $22,000 . . . and $52,000." *Id.* at *11. The trial court then awarded $52,040—40% of the amount awarded by the jury. *Id.* at *11–12 & n.15.

We noted that, although the trial court's findings described the $575 hourly rate as unreasonable for a "significant portion[] of the work performed," the findings "d[id] not demonstrate that the trial court determined what a reasonable rate should be for such work." *Id.* at *12. Indeed, as here, "[w]e ha[d] no indication that the trial

16

court determined the reasonable hours worked or a reasonable hourly rate." *Id.* Rather, the amount of the award indicated that the court had "skipped [the base-lodestar] step and relied solely on the contingency-fee agreement." *Id.* This was an abuse of discretion. *Id.*

As we have already noted, the Underwriters "used the lodestar method, addressed the *Arthur Andersen* factors, and presented detailed evidence of their attorney's fees." *Mogged*, 2020 WL 7074390, at *18–19; *see Mignogna*, 2022 WL 3486234, at *28. The trial court's award is inconsistent with this evidence, and there is nothing in the record to explain the departure or to "indicat[e] that the trial court determined the reasonable hours worked or a reasonable hourly rate." *Asta Partners*, 2021 WL 5133888, at *12.

Because the trial court's fee award is contrary to the great weight and preponderance of the proffered evidence, and because it does not appear to have applied the relevant guiding rules and principles—namely, the lodestar method—we reverse the trial court's award of attorney's fees.

## V. Remand, Not Render

The Underwriters ask us, in the interest of judicial economy, to render an award of attorney's fees rather than remanding the case for a revised order, which could result in yet another appeal and multi-year delay. *Cf. Ragsdale*, 801 S.W.2d at 882 (rendering award of attorney's fees). The request is understandable—the claims against the Underwriters lacked a basis in law or fact to begin with, *see Fiamma Statler*,

2020 WL 6334470, at *9–13, and now those claims have dragged on for years while the Underwriters attempt to recoup the reasonable and necessary attorney's fees to which they are entitled.

While we are sympathetic with the Underwriters' plight and find the interest of judicial economy persuasive, we nonetheless remand the case for the trial court's redetermination. An award of attorney's fees is, and should remain, within the discretion of the trial court. *See Mogged*, 2020 WL 7074390, at *19; *DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 862 (Tex. App.—Fort Worth 2018, no pet.). Of course, as we have held, the trial court must act within the bounds of its discretion and in accordance with the evidence. But even when the evidence is uncontroverted, "[a] trial court is not . . . a mere rubber stamp or bean-counter." *Mogged*, 2020 WL 7074390, at *18; *see Mignogna*, 2022 WL 3486234, at *17 ("Even if a fee claimant's testimony is uncontroverted, a trial court is not obligated to award the requested amount."). And we are not in the practice of usurping a trial court's discretion or responsibilities. *See Mogged*, 2020 WL 7074390, at *19 ("[R]ather than 'usurp the trial court's discretion by determining whether the amount of attorney's fees requested was "reasonable"' . . . we conclude that the fee issue, including the trial court's award of conditional appellate attorney's fees, should be remanded for redetermination." (quoting *DeAngelis*, 556 S.W.3d at 862)). The trial court is more than capable of exercising its discretion within the bounds of the law, and we trust that it will do so upon a second remand without the need for a third.

## VI. Conclusion

The trial court abused its discretion by failing to apply the guiding rules and principles—the lodestar method—and by awarding an amount of attorney's fees that is contrary to the great weight and preponderance of the evidence. We reverse the trial court's award of attorney's fees and remand the case to the trial court to redetermine the amount of "all . . . reasonable and necessary attorney['s] fees incurred [by the Underwriters] with respect to the challenged cause[s] of action."[15] Tex. R. Civ. P. 91a.7 (2013); *see* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: March 16, 2023

---

[15]The Underwriters have not challenged the trial court's failure to award conditional appellate fees for the present appeal or for any future appeals.