# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO.  03-22-00176-CV

---

**Appellant, Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics// Cross-Appellant, OMH-Healthedge Holdings, Inc. d/b/a Omega Healthcare Management Services**

**v.**

**Appellee, OMH-Healthedge Holdings, Inc. d/b/a Omega Healthcare Management Services// Cross-Appellee, Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics**

---

**FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-21-001179, THE HONORABLE MAYA GUERRA GAMBLE JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

OMH-Healthedge Holdings, Inc. d/b/a Omega Healthcare Management Services (Omega) sued Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics (Abira) for damages and attorney's fees under theories of breach of contract and sworn account.  The trial court granted summary judgment for Omega for actual damages but denied any award of attorney's fees.  Abira appealed, arguing that Omega breached the parties' agreement first, thereby excusing Abira from its future contractual obligations.  Omega cross-appealed, arguing that the trial court erred in denying it attorney's fees.  We will affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Omega provides medical coding and billing services to health-care companies. Abira provides professional analytic and diagnostic services for the medical profession. In December 2018, Omega and Abira entered into a Services Agreement in which Omega would perform certain medical coding and billing support services for Abira and provide Abira with monthly invoices for those services. Abira agreed to pay all such invoices within 15 days of receipt unless there was a dispute regarding the invoiced amount. The Agreement provided that Abira had 30 days to dispute any invoice it received. Abira agreed that if it did not dispute an invoice within 30 days, the invoiced amounts would be deemed final, and all amounts would be due and owing within 45 days of Abira's receipt of the invoice.

Omega performed services under the Agreement and sent monthly invoices to Abira, which Abira paid for several months. Beginning in May 2019, however, Abira stopped paying Omega's invoices, although it did not, at that time, lodge any dispute about them. From May 2019 through September 2019, Omega continued to perform services under the Agreement and submit monthly invoices, but Abira did not submit payments. Abira did not dispute any portion of the May to September 2019 invoices within the Agreement's 30-day dispute period.

On September 8, 2019, Abira sent Omega a "sixty (60) day no-cause written notification" terminating the Agreement. This letter did not provide any reason for termination, dispute any of the past-due invoices, or give an excuse for Abira's failure to pay. Abira's letter stated that termination would be "effective sixty (60) days later"—on November 7, 2019. Before that date, however, Omega sent its own letter terminating the Agreement.

Omega filed a motion for summary judgment, attaching evidence that it had performed the services called for in the Services Agreement and that Abira had failed to pay the

2

last five months of invoices, totaling $90,401.49. In its response in opposition to Omega's motion, Abira asserted that the Services Agreement required Omega to pre-submit all work to Abira via a "SOW" (statement of work) and to attach to its invoices "activity logs" setting forth the specific activities conducted by Omega's personnel. Abira presented summary-judgment evidence that Omega had done neither of those things, thereby allegedly violating the Agreement. Abira argued that Omega's failures were material breaches of the Agreement that excused Abira from its own obligations under the Agreement, including paying for Omega's services.

The trial court granted Omega's motion for summary judgment. In addition to actual damages, prejudgment interest, and postjudgment interest, the summary-judgment order decreed that Omega recover judgment from Abira for "[a]ttorneys' fees, associated expenses, and court costs in the amount to be determined by the Court in the absence of an agreement by the parties."

When Omega and Abira were unable to reach an agreement on the amount of the attorney's fee award, Omega filed a pleading titled "Motion to Modify Final Judgment to Include Amount of Attorneys' Fees and Costs," to which it attached an affidavit and invoices supporting its request for $55,215 in attorney's fees and $643 in costs. Rather than filing a motion requesting the court to make the anticipated determination of the attorney's fee award, Omega apparently believed that the order granting summary judgment was a final judgment that needed to be "modified" in order to incorporate an attorney's fee award. The court denied the motion to modify the judgment in an order stating that the "motion to modify the Court's final judgment in order to incorporate attorney's fees into the judgment lacks merit and should be denied." The court later clarified that it intended this order to decree a complete denial of attorney's fees to Omega.

3

Abira appealed the award of actual damages to Omega. Omega cross-appealed the denial of attorney's fees.

## DISCUSSION

### *Breach of Contract*

Abira argues that Omega's failure to use SOWs and activity logs were material breaches of the Services Agreement and thus excused Abira from its own obligations to perform—i.e., pay for Omega's services—following Omega's alleged breach. It is true that "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (quoting *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004)). There is, however, a well-established exception to that rule: "A party who elects to treat a contract as continuing [after a material breach by the other party] deprives himself of any excuse for ceasing performance on his own part." *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)); *accord Leafguard of Tex., Inc. v. Guidry*, No. 09-21-00034-CV, 2023 WL 3369176, at *4 (Tex. App.—Beaumont May 11, 2023, no pet.) (mem. op.) ("When, however, the nonbreaching party decides to treat the contract as continuing, even after the other party materially breached the agreement, the nonbreaching party may not then seek to excuse his own nonperformance."); *Rescue Concepts Inc. v. HouReal Corp.*, No. 01-20-00553-CV, 2022 WL 2976299, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. denied) (op.) ("[I]f the non-breaching party treats the contract as continuing after the breach, it is deprived of any excuse for terminating its own performance.").

4

Accordingly, the non-breaching party must, after a material breach by the other party, either treat the contract as continuing or as terminated:

> Thus, the non-breaching party must elect between two courses of action: continuing performance under the contract or ceasing to perform. . . . "Seeking to benefit from the contract after the breach operates as a conclusive choice depriving the non-breaching party of an excuse for his own non-performance."

*Rescue Concepts*, 2022 WL 2976299, at *7–8 (quoting *Henry v. Masson*, 333 S.W.3d 825, 841 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

In the present case, Abira stopped paying Omega's invoices beginning in May 2019 but allowed Omega to continue providing services for five months before Abira finally sent notice of termination of the contract in September. During that time, Abira benefited from Omega's continued performance under the Services Agreement. Abira's actions therefore represented a "conclusive choice" to treat the contract as continuing during those five months. *See id.* Thus, Abira may not use Omega's failure to use SOWs and activity logs—even assuming such failure was a material breach by Omega—to excuse the performance of its own contractual obligations, i.e., to pay for Omega's services. Abira's failure to pay Omega's invoices during those five months constituted, as a matter of law, a breach of the Services Agreement by Abira.

Accordingly, the trial court did not err in granting summary judgment for Omega on its breach-of-contract claim.

### Attorney's Fees

As described above, the trial court's January 6, 2022 "Order Granting Plaintiff's Motion for Summary Judgment" decreed that Omega should recover from Abira attorney's fees and costs "in the amount to be determined by the Court in the absence of an agreement by the

5

parties." Because that order did not follow a conventional trial on the merits and did not dispose of Omega's claim for attorney's fees, it was not a final, appealable judgment. *See McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (per curiam) (holding that summary-judgment order that did not dispose of claim for attorney's fees was not final judgment). When Omega subsequently filed a "Motion to Modify Final [sic] Judgment" to include an award of attorney's fees, the court denied the motion, finding in its order that the motion "lack[ed] merit and should be denied." After this Court sought clarification regarding the trial court's intent in denying Omega's motion, the trial court issued an order stating that "[t]he Court intended the denial of Plaintiff's motion to modify the Summary Judgment Order to fully and finally dispose of all remaining claims, issues, and all parties, and to be appealable. Accordingly, the March 23, 2022 Order Denying Plaintiff's Motion to Modify was a final judgment." This clarification order also contained a more detailed explanation of the court's reasoning:

> Because Plaintiff did not submit evidence to support the amount, reasonableness, and necessity of the attorneys' fees and associated expenses it sought during the summary judgment proceedings, the Court, at the time, was of the opinion that Plaintiff was precluded from doing so after the summary judgment proceedings had concluded and therefore, the Court was without the authority to modify its January 6, 2022 order granting Plaintiff's motion for summary judgment."

This order makes clear that the court's intent was to deny any award of attorney's fees to Omega notwithstanding the recitation in the court's earlier order that Omega "have and recover judgment from Abira [for] . . . [a]ttorneys' fees." Accordingly, the court's March 23, 2022 order denying Omega's "Motion to Modify" was indeed a final judgment.

Because the trial court's order granting summary judgment to Omega was interlocutory, Omega's failure to present evidence at that time of the amount and reasonableness of attorney's fees it was seeking did not preclude it from presenting additional evidence at a later

6

time, perhaps through a second or amended summary-judgment motion. *See Rentfro v. Cavazos,* No. 04-10-00617-CV, 2012 WL 566364, at *14 (Tex. App.—San Antonio Feb. 15, 2012, pet. denied) (mem. op.) ("It is certainly possible that a summary judgment movant might not have sufficient evidence to establish an affirmative defense as a matter of law when the motion for summary judgment is first filed, but this does not mean that prior to the entry of any final judgment such evidence might not become available, allowing the movant to amend, refile, or reurge the motion for summary judgment based on additional evidence."); *see also Service Corp. Int'l v. Williams-Birdow*, No. 02-22-00213-CV, 2023 WL 2325206, at *7 (Tex. App.—Fort Worth Mar. 2, 2023, no pet.) (mem. op.) ("[A]n amended or new motion for summary judgment can be filed after a previous motion for summary judgment is denied."); *cf. McNally*, 52 S.W.3d at 196 ("[A] party's omission of one of his claims from a motion for summary judgment does not waive the claim because a party can always move for partial summary judgment, Tex. R. Civ. P. 166a(e), and thus there can be no presumption that a motion for summary judgment addresses all of the movant's claims.").

In its later-filed Motion to Modify, Omega did present evidence of the amount and reasonableness of its requested attorney's fees. The supreme court has held that this is sufficient to make an award of attorney's fees mandatory: "Under section 38.001 [of the Texas Civil Practice and Remedies Code], the trial court has no discretion to deny attorney's fees when presented with evidence of the same." *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); *see also State v. Buchanan*, 572 S.W.3d 746, 750 (Tex. App.—Austin 2019, no pet.) ("When a statute provides for mandatory recovery of attorney's fees, the trial court has no discretion but to award them if they are pleaded and proved.").

Accordingly, the trial court erred in denying an award of attorney's fees to Omega.

## CONCLUSION

We affirm the portion of the trial court's judgment granting summary judgment to Omega for actual damages, prejudgment interest, and postjudgment interest. We reverse the portion of the judgment denying Omega its attorney's fees and remand that portion of the case to the trial court for calculation of a proper award of trial and appellate attorney's fees to Omega.

_____

J. Woodfin Jones, Justice

Before Justices Baker, Theofanis, and Jones*

Affirmed in Part, Reversed and Remanded in Part

Filed: February 13, 2024

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).